IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ELAINE SHELTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.:  07-2171 |
| vs. | ) | |
| | ) | |
| THE RITZ CARLTON HOTEL | ) | |
| COMPANY, LLC | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MOTION TO DISMISS AND TO COMPEL ARBITRATION

Pursuant to the Federal Arbitration Agreement 9 U.S.C. §1 *et seq.,* Defendant, The Ritz Carlton Hotel Company, LLC, moves to dismiss Plaintiff's claim and for an order compelling arbitration.  In support of its motion, Defendant refers this court to the attached memoranda of points and authorities.

Respectfully submitted,

*Tina M. Maiolo*

By:_____
    Tina M. Maiolo, Esq., #98745
    1615 L Street, NW
    Suite 500
    Washington, DC 20036
    (202)210-5585/(202)310.5555
    tm@carrmaloney.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 4th day of December 2007, a copy of the foregoing was sent via first-class mail, post prepaid, to Steven C. Kahn, Esq., 5028 Wisconsin Avenue, Suite 300, Washington, DC 20016, Attorney for Plaintiff.

*Tina M. Maiolo*

_____
Tina M. Maiolo, Esq.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ELAINE SHELTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.:  07-2171 |
| vs. | ) | |
| | ) | |
| THE RITZ CARLTON HOTEL | ) | |
| COMPANY, LLC | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND TO COMPEL ARBITRATION

This motion to dismiss and compel arbitration is before the Court pursuant to Section 4 of the Federal Arbitration Act, which allows a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration ... [to] petition any United States district court ... for an order directing that arbitration proceed in the manner provided for in such agreement." 9 U.S.C. §4.

### I.  PRELIMINARY STATEMENT

The Ritz-Carlton Hotel ("The Ritz") hired Ms. Shelton on July 27, 1997, as a Cook III. Since that time, The Ritz has transferred Ms. Shelton to a Cook II position in the Employee Dining Room.  As a term and condition of her continued employment, on June 17, 2005, Ms. Shelton executed an agreement, by which she agreed to mandatory arbitration of all disputes over employment decisions that Ms. Shelton believes to be discriminatory or retaliatory.  (*See* Arbitration Agreement, Exhibit 1; *see also* Plaintiff's signature page at Exhibit 2).   The mandatory arbitration agreement provides:

> I must request Arbitration if I wish to challenge my termination for any reason or for management decisions that I believe are discriminatory or retaliatory. Arbitration is a process in which my workplace issue is presented to a neutral third party, the arbitrator, for a final and binding decision. The arbitrator, who is provided by the American Arbitration Association ("AAA") runs the privately held proceedings. My Arbitration shall be governed by the AAA's Rules for Employee Dispute Resolution.

Exhibit 1, at p. 11.

Notwithstanding the mandatory arbitration agreement between Ms. Shelton and The Ritz-Carlton Hotel, on October 31, 2007, Ms. Shelton served upon The Ritz a complaint she had filed with the Superior Court of the District of Columbia on October 23, 2007. (*See* Complaint, Exhibit 3). Her complaint alleges raced-based discrimination in the form of failure to promote in violation of Title VII of the Civil Rights Act of 1964, as amended.[1] *Id.*

Pursuant to the Federal Arbitration Act, 9 U.S.C. §1 *et seq.,* The Ritz now seeks an order dismissing this matter and compelling Ms. Shelton to proceed to Arbitration, as set forth in the mandatory arbitration agreement she executed on June 17, 2005.

**II.  LEGAL ARGUMENT**

The Civil Rights Act, as amended in 1991, encourages "alternative means of dispute resolution," including arbitration, to resolve disputes arising out of Title VII *See Hirras v. National R.R. Passenger Corp.*, 10 F.3d 1142, 1146 (5th Cir.1994) citing (42 U.S.C.A. § 2000e note (West Supp.1993)). There is, therefore, a strong presumption in favor of enforcing arbitration agreements. *Stromberg Sheet Metal Works, Inc. v. Washington Gas Energy Sys., Inc.*, 448 F.Supp.2d 64, 67 (D.D.C.2006).

---

[1] On November 30, 2007, The Ritz removed the matter to this Court from the Superior Court of the District of Columbia.

To determine if the parties have agreed to arbitrate the dispute before it, the Court must conduct a two-part inquiry. First, the Court must decide whether a valid agreement to arbitrate exists between the parties. *Nelson v. Insignia/Esg, Inc.* 215 F.Supp.2d 143, 150 (D.D.C.2002). Second, the Court must decide if the specific disputes fall within the scope of the agreement to arbitrate. *Id.* "Whether a claim falls within the scope of an arbitration agreement turns on the factual allegations in the complaint rather than the legal causes of action asserted." *H.S. Gregory v. Electro-Mechanical Corp.*, 83 F.3d 382, 383 (11th Cir.1996). *See also Genesco Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 846 (2d Cir.1987) ("[i]f the allegations underlying the claims 'touch matters' covered by the sales agreement, then those claims must be arbitrated, whatever the legal labels attached to them.").

In determining whether a valid agreement to arbitrate exists, federal courts have "[a]pplied ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U .S. 938, 944 (1995). Therefore, "[u]nder the District of Columbia law, the party asserting the existence of a contract to submit disputes to arbitration has the burden of proving its existence." *Bailey v. Federal Nat. Morg. Ass'n.*, 209 F.3d 740, 746 (D.C.Cir .2000). Notwithstanding, "[t]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Nelson*, 215 F.Supp.2d at 149.  As such, the Ritz bears the burden of proving that the parties entered into a valid arbitration agreement. Ms. Shelton must then prove that the agreement does not encompass her claims, otherwise, she must be compelled to arbitrate.

The indisputable evidence proves that the parties entered into a valid and enforceable arbitration agreement on June 17, 2005.  *See* Exhibits 1 and 2.  According to the law of the

District of Columbia, a valid and enforceable contracts exist where there is "both (1) agreement as to all material terms, and (2) [an] intention of the parties to be bound." *Georgetown Entertainment Corp. v. District of Columbia*, 496 A.2d 587, 590 (D.C.1985)). In this case, each material term is set forth in the Agreement, Exhibit 1. It establishes that in all cases in which Ms. Shelton challenges management decisions on the grounds that she believes they are discriminatory or retaliatory, Ms. Shelton must request Arbitration. *Id.* The agreement also explains to Ms. Shelton how Arbitration will be governed, as well as how hearings will be conducted. *Id.*

Furthermore, the Agreement specifically states:

> I understand that by signing this agreement, I am waiving the ability to file a lawsuit to challenge any termination or management decision that is covered by this Arbitration provision…

*Id.* at 11. Ms. Shelton executed the agreement stating "I agree to this Employee Agreement, and to uphold The Ritz-Carlton standards…I will read this Agreement carefully and, if I have any questions, I will ask my Manager or Director of Human Resources." Ms. Shelton expressed neither a lack of understanding nor a lack intent to be bound by the provisions of the Agreement.

There can be no genuine dispute therefore that Ms. Shelton understood and agreed to be bound by the material terms set forth in the mandatory arbitration agreement. The Ritz, therefore, has proven that the mandatory arbitration agreement is valid and enforceable.

On the other hand, Ms. Shelton simply cannot prove that the agreement does not encompass her claims. The mandatory arbitration agreement encompasses management decisions that Ms. Shelton believes to be discriminatory or retaliatory. Exhibit 1, at p. 11. In this case, Plaintiff alleges that The Ritz unlawfully failed to promote her on two occasions

because of her race, in violation of Title VII of the Civil Rights Act of 1964. The Ritz's decision not to promote Ms. Shelton is clearly a management decision, which Ms. Shelton contends was based upon discriminatory animus. There also can be no genuine dispute, therefore, that the mandatory arbitration agreement contemplates and covers the claims raised in Ms. Shelton's complaint.

### III.   CONCLUSION

For the reasons stated above, this Court should advance legislative intent, as expressed in the Civil Rights Act of 1964, to encourage alternative means of dispute resolution by upholding the parties' valid and enforceable mandatory arbitration agreement. Ms. Shelton's complaint, therefore, should be dismissed and she should be compelled to proceed to mandatory arbitration as set forth Exhibit 1.

Respectfully submitted,

*Tina M. Maiolo*

By:_____
    Tina M. Maiolo, Esq., #98745
    1615 L Street, NW
    Suite 500
    Washington, DC 20036
    (202)210-5585/(202)310.5555
    tm@carrmaloney.com

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 4th day of December 2007, a copy of the foregoing was sent via first-class mail, post prepaid, to Steven C. Kahn, Esq., 5028 Wisconsin Avenue, Suite 300, Washington, DC 20016, Attorney for Plaintiff.

*Tina M. Maiolo*

_____
Tina M. Maiolo, Esq.

# EXHIBIT 1

*By applying the principles of trust, honesty, respect, integrity and commitment, we nurture and ... e talent to the ... h individual ... the company.*

**Revolutionizing
The Way We Work**

THE RITZ-CARLTON EMPLOYEE AGREEMENT

# My Rights

During my employment with The Ritz-Carlton Hotel Company, L.L.C. ("The Ritz-Carlton") I have the following rights:

- The right to know the standards of my job
- The right to know how I am performing in my job
- The right to periodic performance reviews and an explanation of them
- The right to see my personnel file
- The right to job training for my position
- The right to request retraining
- The right to be involved in the planning of the work that affects me
- The right to a competitive compensation and benefits plan
- The right to a quality work environment
- The right to be considered for a promotion to an available position for which I am eligible and qualified
- The right to raise concerns without fear of reprisal
- The right to be treated fairly and professionally
- The right to The Ritz-Carlton Fair Discipline Pact
- The right to The Ritz-Carlton Open Appeal and Issue Resolution Process

# Fair Discipline Pact

I agree to perform my duties in a professional manner and to provide excellent service consistent with The Ritz-Carlton Credo and service philosophy.

If I fail to meet expected work performance, behavior or conduct standards at any point after the successful completion of my 60-day/90-day Orientation Period, as determined by my individual property:

- My below-standard work performance, behavior or conduct standards will be documented
- The disciplinary process will be fair
- The right to be provided the progressive discipline process outlined in the Employee Handbook will be applied unless I engage in a major breach of standard or conduct

I understand that a major violation of a work performance, behavior or conduct standard will result in immediate termination. Examples of major violations include fighting, theft, violation of The Ritz-Carlton policy prohibiting harassment and unprofessional conduct, use of drugs, and soliciting gratuities from guests (this list is not all inclusive and I will refer to the Employee Handbook for additional examples). In the event of a major violation:

- I will be suspended pending a fair and complete investigation.
- If I am terminated, I will be provided with the reasons for my termination and will be able to pursue my rights under the Open Appeal and Issue Resolution Process.

3

# Open Appeal & Issue Resolution Process

The Ritz-Carlton is committed to resolving issues that arise in the workplace. The Open Appeal & Issue Resolution ("Open A.I.R.") Process has been developed specifically to assist me with this by providing step-by-step direction that is easy to understand. Each step of the process is designed to keep the lines of communication open while pursuing all possible avenues to resolve issues. The process is flexible, accessible and confidential. If I have a problem, I will pursue the Open A.I.R. Process.

**The Open Appeal & Issue Resolution ("Open A.I.R.") Process consists of three stages:**

1. Open Door Process
2. Peer Review
3. Arbitration



# Stage One: Open Door Process

The Ritz-Carlton and I agree to open communication and fairness. The Open Door Process means that I have an opportunity to resolve workplace issues early and informally. It ensures that all doors are progressively open to me. It gives me the right to talk to my immediate supervisor or manager as described below without fear of retaliation. Management and Guidance Team members will attempt to resolve my concerns.

I will share my concerns through the Open Door Process as follows:

### First Step
I will attempt to resolve my workplace concern with my immediate supervisor.

### Second Step
If I am not satisfied with my supervisor's response or my supervisor is part of my issue, I will attempt to resolve my workplace issue with the next level of management, up to my Division Head.

### Third Step
If my Division Head is unable to resolve my workplace issue, I will talk with my General Manager.

At any time, I may by-pass any step in the Open Door Process and speak directly with my Director of Human Resources. Guidance Team members may pursue the Open Door Process by contacting Corporate Human Resources.

## Stage Two: Peer Review Panel

If the Open Door Process does not resolve my workplace issue and I have completed my orientation period, I shall seek further help through the Peer Review Panel. This gives me another opportunity to resolve my workplace issue.

## What is Peer Review?

Peer Review is a more formal means of resolving my workplace issue that allows me to have a private and confidential hearing before a panel of employees who have been trained and certified to provide honest and fair decisions. I will select the five panelists through a random drawing of names of Peer Review panelists certified by The Ritz-Carlton.





## Can Peer Review be used for any issue?

Peer Review is designed to review management decisions that have been made, such as disciplinary actions up to and including termination. The Peer Review Panel will hear appeals involving the application of policies and established practices. Peer Review is not available for management decisions regarding:

- Performance appraisal ratings
- Pay and benefits
- Promotion/transfer decisions
- The results of a drug test sponsored by The Ritz-Carlton
- Disciplinary actions taken for violations of the policy on Harassment and Professional Conduct

The process is not for resolving issues, such as personality conflicts, that do not involve a specific management decision. Unless the issue involves termination of employment, Peer Review may only be used when I have used the Open Door Process first. The Senior Vice President of Human Resources may designate additional exceptions to the Peer Review Process.

## Who are the panelists/members of the Peer Review Panel?

Peer Review Panel members are employees throughout my property who volunteered to participate in this program. They have been certified in the Peer Review Panel process and received training to help them make honest and fair decisions. The five panelists of the Peer Review Panel are selected randomly by me from names of certified panelists provided by the Director of Human Resources. A member of the Panel may not be directly involved in my workplace issue. Also, members of the Panel may not have a supervisory relationship or work in the same department with me or with other members of the Panel. Panelists sign a confidentiality agreement prior to participating in the Panel hearing. For a line employee, the Peer Review Panel would consist of three line employees and two managers. If a manager has requested a Peer Review, the Panel will be made up of three managers and two Guidance Team members. More detailed selection criteria and procedures are available from the Human Resources Department.

## How do I request a Peer Review?

After I have followed the Open Door Process, I will complete a Peer Review Request Form and submit it to the Human Resources Department. I may ask for help in completing the form from the Director of Human Resources or another employee within The Ritz-Carlton. I must request a Peer Review Panel hearing within thirty (30) days of the incident that I wish to address. Within five (5) business days of submitting the Peer Review Request Form, the Director of Human Resources or his/her representative will make arrangements for me to select the five Peer Review Panelists.

# What happens at a Peer Review?

Peer Review allows me to have a confidential hearing with the Panel, which will listen to both parties involved in my issue. The Panel will provide a fair and honest decision. The Panel may meet separately with each party before arriving at a decision. Important points to note are:

- I may be assisted by a current employee of The Ritz-Carlton. This is an internal process and, therefore, external assistance is not permitted.
- I shall have an opportunity to present documentation that relates to my workplace issue.
- The Panel reviews the issue and ensures The Ritz-Carlton policies or established practices were followed thoroughly, correctly and consistently. The Peer Review Panel can either:

  1. Overturn the original management decision which led to my workplace issue
  2. Modify the management decision in some way to make it more consistent with The Ritz-Carlton's policies and established practices
  3. Allow the original management decision to remain in effect

The Panel's decision is reached confidentially through a "secret ballot" conducted by a trained Peer Review Panel Facilitator, usually the Director of Human Resources or a Human Resources Representative. The Facilitator does not participate in the vote or give any substantive input on the issue before the Panel. For the Panel's decision to apply, the decision must be supported by a majority (at least three) of the Panel's votes. The Panel will notify me in writing of their decision within five (5) business days of completing the voting process.

The Ritz-Carlton and I agree that all information discussed during the Peer Review Panel's hearing is completely confidential.



## Stage Three: Arbitration

I must request Arbitration if I wish to challenge my termination for any reason or for management decisions that I believe are discriminatory or retaliatory. Arbitration is a process in which my workplace issue is presented to a neutral third party, the arbitrator, for a final and binding decision. The arbitrator, who is provided by the American Arbitration Association ("AAA") runs the privately held proceedings. My Arbitration shall be governed by the AAA's Rules for Employee Dispute Resolution.

## What happens at Arbitration?

My request for Arbitration is filed with a local AAA office. The AAA office offers a list of qualified local arbitrators and each party numbers the list in order of preference. An arbitrator is selected based upon the parties' preferences. AAA arranges a hearing date. At the hearing, both The Ritz-Carlton and I have an opportunity to present our respective positions on my workplace issue. Testimony is given, documents are exchanged, and witnesses are questioned and cross-examined. The arbitrator will make a decision after both The Ritz-Carlton and I have presented our evidence and arguments. If the arbitrator rules in my favor, I may be reinstated and/or awarded additional remedies consistent with the laws governing The Ritz-Carlton.

## How do I apply for Arbitration?

To apply for Arbitration I must complete an Arbitration Request Form. I will be required to pay a $50.00 fee to contribute to the related expenses. I may consult an attorney or another advisor of my choice to participate in the Arbitration at my own expense.

The arbitrator shall be authorized to award whatever remedies are allowed by law.

I may request an Arbitration hearing within one year of the management decision I wish to appeal.

I understand that by signing this agreement, I am waiving the ability to file a lawsuit to challenge any termination or management decision that is covered by this Arbitration provision. For any issues that are not covered by the Arbitration provision, I agree to exhaust every other step in the Open A.I.R. Process (as applicable) before filing a lawsuit. The Ritz-Carlton agrees to extend applicable statute of limitations and any other time-conditional filing requirements for the length of time that it takes to pursue the Open A.I.R. Process.



# The Ritz-Carlton Employee Agreement

I am proud to join The Ritz-Carlton. Both The Ritz-Carlton and I are committed to establishing a long and successful relationship. I understand that Ritz-Carlton employees are Ladies and Gentlemen providing excellent service to our guests. I agree to this Employee Agreement, and to uphold The Ritz-Carlton standards. In return, The Ritz-Carlton promises to treat me with dignity and respect. Upon the successful completion of my 60-day/90-day Orientation Period, as determined by my individual property, I will receive the rights and benefits in this Employee Agreement. I will read this Agreement carefully and, if I have any questions, I will ask my Manager or the Director of Human Resources.

**The Ritz-Carlton and I agree as follows:**

My name is

_____

My start date is _____

My starting rate of pay is _____

**Agreement between:**

Print Name (Employee) _____

Signature _____

Date _____

Print Name (The Ritz-Carlton) _____

Signature _____

Date _____

At The Ritz-Carlton, our Ladies and Gentlemen are the most important resource in our service commitment to our guests. By applying the principles of trust, honesty, respect, integrity and commitment, we nurture and maximize talent to the benefit of each individual and the company. The Ritz-Carlton fosters a work environment where diversity is valued, quality of life is enhanced, individual aspirations are fulfilled, and The Ritz-Carlton mystique is strengthened.

**EXHIBIT 2**

## The Ritz-Carlton Employee Agreement

I am proud to join The Ritz-Carlton. Both The Ritz-Carlton and I
are committed to establishing a long and successful relationship.
I understand that Ritz-Carlton employees are Ladies and Gentlemen
providing excellent service to our guests. I agree to this Employee
Agreement, and to uphold The Ritz-Carlton standards. In return,
The Ritz-Carlton promises to treat me with dignity and respect.
Upon the successful completion of my 60-day/90-day Orientation
Period, as determined by my individual property, I will receive the
rights and benefits in this Employee Agreement. I will read this
Agreement carefully and, if I have any questions, I will ask my
Manager or the Director of Human Resources.

The Ritz-Carlton and I agree as follows:

My name is _Elaine Shelton_

My start date is _7-27-97_

My starting rate of pay is _____

Agreement between:

Print Name (Employee) _Elaine Shelton_
Signature _Elaine Shelton_
Date _6-17-05_

Print Name (The Ritz-Carlton) _____
Signature _Elaine Shelton_
Date _6-17-05_

# EXHIBIT 3

## IN THE SUPERIOR COURT
## FOR THE DISTRICT OF COLUMBIA



ELAINE SHELTON
2531 Savannah Street, SE #1

Washington, DC 20020

        Plaintiff,

    v.

THE RITZ-CARLTON HOTEL COMPANY
4445 Willard Avenue, Suite 800
Chevy Chase, MD 20815

      Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

RECEIVED
,ivil clerk's Office

OCT 2 3 2007

Superior Court of the
District of Columbia

Case No._____

**JURY DEMANDED**

## COMPLAINT FOR DISCRIMINATORY DENIAL OF PROMOTION

Plaintiff Elaine Shelton alleges:

### JURISDICTION AND VENUE

1. Jurisdiction is conferred on the Court by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f). In addition, the Court has personal jurisdiction over Defendant Ritz-Carlton Hotel Company, LLC ("Ritz-Carnton"), which does business in the District of Columbia. Plaintiff has satisfied conditions precedent to suit under Title VII, including, in particular, exhaustion of administrative remedies.

2.     Venue properly lies in this judicial district in which the unlawful employment practices were committed and in which the parties reside.

### PARTIES

3. Plaintiff Elaine Shelton, an African-American female, seeks relief under Title VII for an illegal denial of promotion in May, 2005 and again in September, 2005.

4.       Defendant, a corporation headquartered in Chevy Chase, MD, is engaged in the business of providing hospitality at hotels and spas at 66 locations worldwide.

**COMMON ALLEGATIONS**

5. Plaintiff began her employment with Ritz-Carlton in September, 2000 as a Cook III at its $22^d$ Street location in Washington, D.C. Plaintiff had previously been employed as a cook for several years by Marriott International, Inc., which owns Ritz-Carlton.

6. Within a month of her hire by Ritz-Carlton, Plaintiff was promoted to the position of Cook 11. Throughout her employment, Plaintiff has received consistently favorable performance evaluations.

7.       The Ritz-Carlton operates several cooking departments at its 22nd Street location, including an Employee Dining Room, a Banquet Kitchen, the Gardemanger Kitchen and In Room Dining. The cooking hierarchy at the hotel includes an Executive Chef, two Sous Chefs, and Cooks I-III. At relevant times, Ritz-Carlton employed seven or eight Cooks 1.

8. As a Cook 11, Plaintiff principally worked in the Employee Dining Room. However, throughout her seven years of employment at the Ritz-Carlton, she acquired significant experience in virtually every cooking department, including "fine dining" experience in the Banquet Kitchen and in the Gardemanger Kitchen. Even as a Cook II in the Employee Dining Room, Plaintiff has not simply prepared pre-cooked meals. Rather, her duties have included prepping, cooking, developing menus and recipes, and tracking inventory. On many occasions, Plaintiff has taken the lead role in the kitchen in the absence of a chef.

2

9.    In 2004, Plaintiff applied for a transfer and promotion to the position of Employee Dining Room supervisor at Ritz-Carlton's Georgetown location. She was denied the promotion on the asserted ground of "inexperience."

10. In May, 2005, Plaintiff applied for an advertised position as Cook I in the Banquet Kitchen. She was not selected, or even interviewed, for the position. Ritz-Carlton filled the opening with an Hispanic male, an out-of-state candidate who was subsequently forced to resign because of poor work performance.

11. In early September, 2005, Plaintiff applied for an advertised position as Cook I in the Gardemanger Kitchen. Plaintiff was the sole applicant for the job.

12. Plaintiff was advised by the Executive Chef, a white male, that as part of the application process, she would be required to participate in a tasting test and would be judged on several factors, including taste, presentation, food temperature and demonstrated organizational skills in preparation of the meal. The tasting test was administered by the Sous Chef, an Hispanic male, who complained that the asparagus was not cut properly and that she had not chosen the correct plate for her presentation.

13. No tasting test had ever been required of an applicant for a Cook I position other than Plaintiff.

14. Several weeks passed without word regarding the status of Plaintiff's promotion request. Plaintiff's subsequent inquiries remained unanswered. Ritz-Carlton never informed her of her nonselection.

15.    Rather than offer Plaintiff the position of Cook I, Ritz-Carlton withdrew the job posting and created a new Junior Sous Chef position, which was not advertised. Plaintiff

was unaware that a new job had been created until the successful candidate, a white male, began working.

16.     At least five African-Americans, four of whom are female, have applied for the position of Cook I at the Ritz-Carlton during Plaintiff's tenure. None was selected. No Afican-American has ever been hired by Ritz-Carlton as a Cook I (or chef) at its 22nd Street location.

17. Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that Ritz-Carlton denied her promotion on the basis of her race and gender. Following an investigation, the EEOC, on May 29, 2007, issued its Determination, finding that Ritz-Carlton "discriminated against Charging Party due to her sex, female, and race, Black, regarding promotion in violation of Title VII." See Exhibit A at 2.

18.     The Ritz-Carlton declined the EEOC's invitation to conciliate and, accordingly, on July 25, 2007, the EEOC issued Plaintiff a notice of right to sue. Plaintiff has filed suit within 90 days of her receipt of notice.

## COUNT I

### (Discriminatory Denial of Promotion in Violation of Title VII)

19. Plaintiff  incorporates  m  1-18.

20.     Defendant Ritz-Carlton was at relevant times Plaintiff's "employer," as defined by Title VII, 42 U.S.C. § 2000e(b).

21. As an African-American woman, Plaintiff is a member of a protected subclass under Title VII.

22.     Plaintiff was qualified for the promotional opportunities for which she applied.

4

23. The positions for which Plaintiff was not selected despite her qualifications were filled by individuals who either were not members of a protected group or were not members of Plantiff's protected subclass.

24.    Plaintiff's race and gender were motivating factors in Ritz-Carlton's decisions to deny her promotion. Accordingly, her nonselection violated Title VII, 42 U.S.C. § 2000e-2(a)(1).

25. The Ritz-Carlton's withdrawal of the posting for the Cook I position in the Gardemanger Kitchen, and its subsequent creation of a new position, Junior Sous Chef that was not posted or otherwise known to Plaintiff, were discriminatorily motivated and thereby violated Title VII, 42 U.S.C. § 2000e-3(a).

WHEREFORE, Plaintiff requests that this Court enter judgment against Ritz-Carlton and award her appropriate compensatory and punitive damages; back pay measured by the difference between her compensation and benefits as Cook 11 and the compensation and benefits she would have enjoyed in the jobs she was discriminatorily denied; other appropriate legal and equitable relief, including, but not limited to, instatement in the position of Cook I at Ritz-Carlton's 22nd Street location; and reasonable attorney's fees and costs incurred in prosecuting this action.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Respectfully submitted,

**LAW OFFICES OF STEVEN C. KAHN**

By: _____

Steven C. Kahn
D.C. Bar #330431
401 E. Jefferson Street, Suite 201
Rockville, MD 20850
(301)-838-4113

**CONNOLLY RODGERS & SCHARMAN, LLC**

By: _____

Cliffor Scharman
D.C. Bar # 385324
5028 Wisconsin Avenue, NW, Suite 300
Washington, DC 20016
(202)-537-6789

Attorneys for Plaintiff

October 23, 2007



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Baltimore Field Offiee

*10* S. Howard Street, 3' Floor
Baltimore, MD 21201
PH: (410) 962-3932
TDD: (410) 962-6065
FAX: (410) 962-4270
EEOC Web Sit*:  www.WK.B0i'

Charge No.  570-2006-00508C

Ms. Elaine Shelton
2531 Savannah Street, SE #1
Washington, DC 20020                    **CHARGING PARTY**

The Ritz-Carlton Hotel Company, LLC
1!150 22$^d$ Streat, NW
Washington, DC 20037                    **RF.SPONDE~NT**

<u>DETERMINATION</u>

Under the ianthority vest    in me by the Commission's Procedural Regulations. I issue on behalf
of the Cornmission the following deter-nination on the merits of the subject charg- filed under
Title VII of the Civil Rights Act of 1964, as amended, (hereittafter referred to as 'Title Vfl").
Respondent is an employer within the meaning of Title VEI and all' jurisdietional requirements for
coverage have been met.

Churging Party elleged that she -Nas discriminated against with regard to promotion based on her
sex, female, and race, Black.. Within a month of Charging Party beginri g employment,
Respondent promoted Charging Party to the position of Cook E in October 2000. and she
remains em-ployed as a Cook $_R$. In May 2005, Charging asserted she applied for an advertised
position of Cook I in the Banquet Kitchen (representing a promotion fbr her), but Respondent did
not select hr-t, being told a more qualified candidatt had been chosen (a White inale). Charging
Party states that approximately the same time of her rejection for this promotion, another vacant
Cook I position in the Gardernnanger Kitchen was advertised.  She applied tbr this position and
was the sole applicant. Upon receipt of the application, Charging Party described being told 3he
would be required to participate in a tasting test and would be judged on many factors including
taste, appearance, food temperature and organizational skil's while preparing the nieal.  Charging
Party maintained no other applicant for a Cool. *I* position was required to complet: this "tasting."
Following the tasting, Cliarging Party stated she was informed that she required more experience
and would riot be selected to the position of Cook 1.  In November 2005, Respondent pulled the
job posting for the position of Cook ]I and created a new position of Superwisory Junior Sous
Chef.  Charg~ing Party stated she did not possess the necessary qualifications for this newly
created position; therefore, was -,ot a cand;idate considered for promotion. According to
Charging; party, Respondent hired a While miate for junior Sous Chef.

Respondent denied all aliegations of discrimination and retaliation.  It acknowledged Charging
Party applied for both positions, bot maintained Charging Party cannot establish a prima facie
-.ase withirespect to either alleged failure to promote situanions.  Specific to the pcsition in lie
Blanquet Kitchen, Respondent maintains they hired a more qualified and experienced candidate

E x h i b i t  A

N4,;11-ninat 0ln (Conti.
Charge No: 570-2O06-005MC
Page 2

for the poviion. Respoadent states thcy neve.- filled 'he pos'tion of (jardemanger Cook [I;
I'Deretb. C h r i g Party cannot show a vilation of the kaw witl, regard to p-rorii-tion. fit
addP:on, Re~sp,,ndenit ,ales ChaDirin ?artv flailed to xpply ;br the position of Junior So%is Chef
and was ract onsidered. Respondent asseits Chargin~ Party ,.'as not qualified foi either of the
positions ii iw hich shc applied dhie to her la~k of exp*-rictnce Preparing food in a fine d-Ming
atmosphere or a! le-st one year o§ experience as a lead line cook in snch an environviert.

Evidence shows Charo;ng Party has been employed hy Respondent in -Ihe position of (7Cok I for
upproximatz-y five yn-ars. She applied for two promotional opportunities to the positions of
Cook I Bariquri Kirtchon ard Cook I Gardemnanger KitcLen. The evi&ence shows Chargig Party
met the basic quAlficatiuns Of eadh of these positions. Specific to the position in the Banquet
Kitchen, the cvidence shows RI-spondent sclv-cted a Hispanic, male candidate. In the second
position of 3ardemnanger Kitchen, the evidence shows Charging Paty was the only applicant for
the positiou. Respondent required Charging Party to participate in a maste testing. Thca evidence
shows this pr=cice to be inconslbsent with the aormal hiring p7vceduies in the position of Cook 1.
As a result, Charging Party was not s6jected to the position and told the reasons were due to lack
of experie!n-x. The ovidence shows Respondent continued to seek a candidate to fill 'he position-,
howeaver, elye'.aal'Y the posting ',vas puMled anid a modification to the position was made. The
new position, Junior &Sons Chef, was rreaLed. Due to lack of qualifications, CP was unable to
apply for·this po:ition. The evidence shows Respondent hired a WH%ie, male for the position.

BasedI on the -atialygis of evideice, I hav~e detennined that Respondent disc-riminated against
Charging Party due to lieu sex.. femalc ane- race, Black regarding pronmotion in violation of Title
Vf.

Upun  inding thdt (here is rcLson to beliieve that violationis have occurrml, the Corruission
atteMptS Lq eliminate the a l g d unlawful practices by informal method,; of conciliation.
Theref6re, lhe Comrrmission now invites the parties to join with iz in reaching a jUSt reSOlUtion Of
this matter. '*Ihe confidtnti³li'y provisions of the statute and Commission Regulations apply to
informnalloi; ubtuined dt,ring concili-Lion.

in this regard, cco.nciliaioni of thib inattei has now begun,  Please be advised that any reasonable
offifer ic resolve vhis. inattee will he consider7ed.  The Commission can seek an amount inclusive of
full backpay (NMal wage loss) with intemesi, bencl-lts, and actual monetary costs incurred by the
Chaltrging Pmly.'  A Couirissior repre-entativ-- wil! prepare and monitor ant actual dollar amount
to imchide at-.cruig v¡ age losses and attendant. benefits, with interest to date; any appropriate fron-,
pay,, and, if appropriate, attorney CeCs aiid cos,s which have accrued to date.  Again, the
Cotmuission is po-stMr-d to coasider any reascnab"ie offer during this period. If an offer has mot
previously been submitted, Rcspond--nt is requested to accept, reject, or submit a counteroffer to
the conciliation proposal whiuh will be Iorthcoming on behalt' of Charving Party'.

 if the Respondent dQoNuces to discuss settlernunt or wheit, for any other r-ason, a s-ettlement

De'termiiiation (cont).
Chalrge -NO: 570-2006-W0508C
Pagv 3   ;

acceptable 10 the office Director *is* not obtained, the Dir-ector will inform the parties and advisc them of the court enforcement altemnative,3 available *to* aggrieveci persons and the Commission.

ON B3EHALF OF THE COMMISSION:

MAY 2 9 200

_____

Date       i

aid S7 Kiel
ADrector

cc:    Mr. Darryl L Franklin, Esquire
       CorPoTat.- Counsel
       Marriott International, Inc.
       Marriott Drive
       Washington, DC 20058

...est Jefferson Street
...ville, MD 20850

Patricia M. Carpenter
System HQ
c/o Vermont Ave. N.W.
Washington D.C. 20005

430

7006 0810 0004 2670 6458

FEDTAIL

$6.11
0002?425-13
AMOUNT
OCT 30 '07
20815
CHEVY CHASE MD
PRIO
U.S. POSTAGE

S0002    0000

UNITED STATES POSTAL SERVICE