**IN THEUNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

ELAINE SHELTON                                      )
                                                    )
              Plaintiff                             )
       v.                                           )        Case No.:  07-2171 RMC
                                                    )
THE RITZ-CARLTON HOTEL COMPANY,  LLC, )
                                                    )
              Defendant.                            )
                                                    )
_____)


**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO**
**DISMISS AND TO COMPEL ARBITRATION**


## I.   INTRODUCTION

Plaintiff Elaine Shelton, an African-American female who has been employed by The

Ritz-Carlton Hotel Company, LLC ("Ritz-Carlton") as a cook since July, 1997, filed suit under

Title VII, alleging that she was discriminatorily denied promotion to Cook I in May, 2005, and

again in September, 2005.  In mid-June, 2005, after the first adverse employment action but

before the second, Ritz-Carlton imposed upon Plaintiff, as a condition of her continued

employment, a mandatory arbitration agreement that covers termination disputes and, with

important exceptions noted below, alleged discriminatory or retaliatory management decisions.

Ritz-Carlton moves to compel arbitration on the asserted ground that the "indisputable

evidence" proves the existence of an arbitration agreement, which "contemplates and covers the

claims raised in Ms. Shelton's complaint." (Def. Mem. at 3,5).  Remarkably, Ritz-Carlton seeks

enforcement of its arbitration agreement without reference to, much less discussion of, <u>Cole v.</u>

Burns International Security Services, 323 U.S. App. D.C. 133, 105 F.3d 1365 (D.C. Cir. 1997)

("Cole"), the landmark decision in this Circuit on the enforceability of mandatory arbitration

agreements. As shown below, Plaintiff may not be compelled to submit her statutory

discrimination claims to arbitration for several reasons.

First, promotion disputes are excluded from arbitration under Ritz-Carlton's integrated.

three-stage dispute resolution procedure. Ritz-Carlton's agreement requires aggrieved

employees to exhaust potential remedies for workplace disputes sequentially, stage by stage.

Promotion disputes can be raised at the first stage ("Open Door"), but not at the second stage

("Peer Review") and, accordingly, not at the third stage. (Def. Exh. 1 at 8).

Second, the dispute-resolution agreement was not even in effect in May, 2005, when

Plaintiff was first denied promotion to Cook I. Accordingly, Plaintiff plainly cannot be

compelled to arbitrate her May, 2005 claim. See generally, AT&T Technologies, Inc. v.

Communications Workers of America, 475 U.S. 643, 648 (1986) ("a party cannot be required to

submit to arbitration any dispute which he has not agreed so to submit").

Third, Ritz-Carlton's agreement may not be enforced because Plaintiff, whose formal

education ended with junior high school, did not knowingly and voluntarily waive her

constitutional right to a jury trial. See generally Morrison v. Circuit City Stores, Inc., 317 F. 3d

646, 668 (6th Cir. 2003) (en banc) (articulating the criteria of a knowing and voluntary waiver of

the fundamental right to sue in court).

Fourth, Ritz-Carlton's one-sided dispute-resolution agreement, which requires the

employee, but not employer, to arbitrate disputes falling within its scope, lacks mutuality of

obligation and thus is not supported by consideration. The agreement was simply foisted upon

Plaintiff after nearly eight years of employment, without an opportunity or ability to affect its

terms.  See generally Practical Concepts, Inc. v. Republic of Bolivia, 615 F. Supp. 92, 94

(D.D.C. 1985)  ("the essence of contract is mutuality").

Fifth, the arbitration agreement, at least as construed by Ritz-Carlton, requires Plaintiff to

pay a share of the  arbitrators' fees and expenses, which she cannot afford and which Cole

prohibits in any event.  Sixth, Ritz-Carlton's dispute-resolution agreement does not assure

Plaintiff  the meaningful discovery to which she is entitled under Cole.

Seventh, the dispute-resolution agreement requires aggrieved employees to invoke

arbitration "within one year" of the challenged management decision(s).  Accordingly, Plaintiff's

discrimination claims, which accrued in 2005, are contractually time-barred, potentially leaving

Plaintiff without a remedy in an arbitral forum.

## II.    STATEMENT OF UNDISPUTED FACTS

### A.  Background

As indicated previously, Plaintiff was hired by Ritz-Carlton in July, 1997 as a Cook

III at its 22nd Street location in Washington, D.C.  (Complaint, ¶5).  Within a month of her hire

by Ritz-Carlton, Plaintiff was promoted to the position of Cook II. Id. at ¶6.

In 2004, Plaintiff applied for a transfer and promotion to the position of Employee Dining

Room supervisor at Ritz-Carlton's Georgetown location.  Plaintiff, who had worked as a cook

for more than a decade, was denied the promotion on the asserted ground of "inexperience."  Id.

at ¶¶5, 9.

In May, 2005, Plaintiff applied for an advertised position as Cook  I.  She was not

selected, or even interviewed, for the position.  Id. at ¶10.

In September, 2005, Plaintiff again applied for an advertised position as Cook I.  She was the sole applicant for the job, but still was not promoted.  Id. at ¶11.

Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that Ritz-Carlton denied her promotion on the basis of her race and gender.  Following an investigation, the EEOC, on May 29, 2007, issued its Determination, finding probable cause to believe that Ritz-Carlton violated Title VII by denying Plaintiff promotion to Cook I.  Id. at ¶17.

### B.  The Ritz-Carlton Employee Agreement

In June, 2005, Ritz-Carlton required Plaintiff to sign an Employee Agreement as a condition of continued employment. (Def. Mem. at 1).  The Ritz-Carlton agreement, which Plaintiff signed on June 17, 2005, affords employees the right to the "Ritz-Carlton Open Appeal and Issue Resolution Process."  ("Open A.I.R.")  (Def. Exh. 1 at 2).[1]  The agreement describes three mandatory, sequential stages of the dispute-resolution procedure, including Open Door Process, Peer Review and Arbitration. Id. at 5.

At Stage One (Open Door), employees have the "opportunity to resolve workplace issues early and informally."  Id. at 6.  The agreement does not define or limit the "workplace issues" that may be presented to management during Stage One.

If the workplace issue remains unresolved after Stage One, employees may "seek further help through the Peer Review Panel." (Stage Two). Id. at 7, 9.  As described by the agreement, Peer Review is generally designed to review management decisions, e.g., "disciplinary actions

---

[1] The Ritz-Carlton Employee Agreement submitted in support of defendant's motion has neither a page "1" nor a page "4".  Plaintiff assumes, however, that the entire agreement has been provided.

up to and including termination," but is **not** available "for management decisions regarding promotion/transfer." Id. at 8.

Employees who are dissatisfied with the outcome of Peer Review and who wish to challenge management decisions they "believe are discriminatory or retaliatory," may request arbitration "within one year" of the challenged decision(s). Id. at 11, 12 (Stage Three). The Ritz-Carlton agreement provides that the arbitration proceedings will be governed by the AAA Rules. Id. at 11.

## III.    ARGUMENT

### A.  Applicable Principles

When presented with a motion to compel arbitration, a district court must initially determine whether the parties agreed to arbitrate the dispute. E.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985).[2] Parties cannot be required to arbitrate unless they have agreed to do so, and the authority of arbitrators to resolve disputes is derived solely from the parties' agreement to arbitrate. EEOC v. Waffle House, Inc., 534 U.S. 279, 294 (2002). Whether a dispute is subject to arbitration raises a question of substantive arbitrability for a court to decide. Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002).

If the court concludes that the parties entered into an enforceable agreement to arbitrate and that the employment dispute falls within the language of the arbitration provision, the court must then determine whether "legal constraints" external to the parties' agreement foreclose arbitration. Mitsubishi Motors, 473 U.S. at 628.

---

[2] Ritz-Carlton notes that Title VII encourages "alternative means of dispute resolution," including arbitration, to resolve discrimination claims. (Def. Mem. at 2). However, Congress, in amending Title VII in 1991, emphasized that alternative methods of dispute resolution were intended to supplement, rather than supplant, the remedies provided by Title VII. Sapiro v. Verisign, 310 F. Supp. 2d 208, 215 (D.D.C. 2004).

In <u>Cole</u>, the Court identified several "legal constraints" on the enforceability of mandatory arbitration agreements. Two constraints are important for present purposes.

First, employees cannot be required to pay for the services of a "judge" in order to pursue their statutory rights. <u>Cole</u>, 105 F. 3d at 1468.[3] In <u>Cole</u>, the parties' contract, like the Ritz-Carlton agreement, did not explicitly address the payment of arbitrators' fees.[4] In order to uphold the validity of the contract, the Court resolved the ambiguity regarding fees against the drafter (Burns) and required the employer to pay the arbitrator's fees in their entirety. <u>Id</u>.; <u>see also</u> <u>Nelson V. Insignia/ESG, Inc.</u>, 215 F. Supp. 2d 143, 154 (D.D.C. 2002) (noting <u>Cole</u>'s rule that fee-splitting provisions in arbitration agreements are per se invalid).

Second, the arbitration arrangement must provide for meaningful discovery. Courts have not really defined the nature of "meaningful" discovery other than to suggest that not every discovery method available to parties in court also must be available in arbitration. But, surely, a reasonable opportunity to depose individuals responsible for the challenged employment decisions must in fairness be afforded claimants in the arbitral forum.

**B**. **Promotion Disputes Are Not Covered By The Arbitration Provisions Of The Ritz-Carlton Agreement**

In contrast to many agreements which broadly define arbitrability to include disputes

---

[3] Subsequent to the <u>Cole</u> decision, the Supreme Court handed down its decision in <u>Green Tree</u>, finding that an arbitration agreement which was silent on the issue of arbitration costs was enforceable unless plaintiff demonstrated that "large arbitration costs could preclude…[her]from effectively vindicating her federal statutory rights in the arbitral forum." <u>Green Tree Fin'l Corp. – Alabama v. Randolph,</u> 531 U.S. 79, 90-91 (2000). As shown below (p.11), Plaintiff has satisfied her burden of proof under <u>Green Tree</u>.

[4] The Court in <u>Cole</u> defined "fees" to include "not only the arbitrator's honorarium, but also the arbitrator's expenses and any other costs associated with the arbitrator's services." 105 F.3d at 1484 n.15.

6

"arising out of or relating to" plaintiff's employment[5], the Ritz-Carlton agreement requires arbitration of (1) termination claims (regardless of the reason for the termination) and (2) "management decisions that [the employee] believe[s] are discriminatory or retaliatory." (Def. Exh. 1 at 11). As indicated previously, the arbitration provision does not by its terms exclude from its scope claims of discriminatory nonpromotion. Nonetheless, an analysis of Ritz-Carlton's integrated dispute-resolution procedure confirms the parties' intention to carve out promotion disputes from the last two stages of the ADR program.

The starting point of analysis is the language of the Open Door Process (Stage One), which very broadly defines grievable disputes as "workplace issues." Id. at 6. At Stage Two (Peer Review), grievable disputes are more narrowly defined. Indeed, the agreement expressly prohibits the Peer Review Panel from entertaining challenges to a range of management decisions (whether or not the basis of the challenge is discrimination), including "[p]romotion/transfer decisions." Id. at 8.

Because employees seeking to challenge a discriminatory denial of promotion do not have access to Peer Review, they also do not have access to arbitration under Ritz-Carlton's mandatory, three-stage sequential dispute-resolution procedure.[6] Nothing in the Ritz-Carlton agreement indicates that aggrieved employees challenging management actions short of termination may skip either Stage One or Stage Two before invoking arbitration. In fact, the only steps the agreement expressly allows employees to by-pass are the steps within the Stage

---

[5]See, e.g., Mitsubishi Motors, 473 U.S. at 624 n. 13 ("arise between [the parties] out of or in relation to" is a "broad clause").

[6] In contrast, employees challenging their termination evidently may by-pass the first two stages and proceed directly to arbitration. See, e.g., Def. Exh. 1 at 8 ("Unless the issue involves termination of employment, Peer Review may only be used when I have used the Open Door Process first").

One/Open Door Process (Def. Exh. 1 at 6) ("At any time, I may by-pass any step in the Open

Door Process and speak directly with my Director of Human Resources").  Accordingly,

employees who, like Plaintiff, challenge management decisions excluded from Stage Two/Peer

Review are barred from arbitration.

    C. **In Any Event, Plaintiff Did Not Agree To Arbitrate The May, 2005 Promotion Denial And Cannot Be Compelled To Do So; Accordingly, The Parties' Entire Dispute Should Remain In A Judicial Forum**

As indicated previously, Plaintiff alleges that she was discriminatorily denied promotion

to Cook I in May, 2005 and again in September, 2005.  The parties do not dispute that the

effective date of the Ritz-Carlton agreement is June 17, 2005, **after** the first adverse employment

action, but before the second.

Plaintiff plainly cannot be compelled to arbitrate a statutory discrimination claim that

accrued before the effective date of the Ritz-Carlton agreement.  At most, she may be required to

arbitrate the post-agreement statutory claim.  E.g., AT&T Technologies, Inc. v. Communications

Workers of America, 475 U.S. at 648 (because arbitration is a matter of contract, "a party cannot

be required to submit to arbitration any dispute which he has not agreed so to submit"); Ballard

& Assocs., Inc. v. Mangum, 368 A. 2d 548, 551 (D.C. 1977) (under District of Columbia law,

"arbitration is predicated upon the consent of the parties to a dispute, and the determination of

whether the parties have consented to arbitrate is a matter to be determined by the court on the

basis of the contracts between the parties"); Ekedahl v. Corestaff, Inc., 337 U.S. App. D.C. 236,

183 F. 3d 855, 858 (D.C. Cir. 1999) (the party asserting the existence of a contract has the

burden of proving its existence).

Obviously, no useful purpose would be served in litigating related claims in two different

fora.  Accordingly, Ritz-Calton's motion to compel arbitration should be denied in the interests

of judicial efficiency.

### D. Ritz-Carlton's Agreement May Not Be Enforced Because Plaintiff Did Not Knowingly And Voluntarily Relinquish Her Constitutional Right To A Jury Trial

In determining whether an employee "knowingly and voluntarily" waived the

fundamental right to a jury trial, courts consider:  "(1) plaintiff's experience, background, and

education; (2) the amount of time the plaintiff had to consider whether to sign the waiver,

including whether the employee had an opportunity to consult a lawyer; (3) the clarity of the

waiver; (4) consideration for the waiver; as well as (5) the totality of the circumstances."

Morrison v. Circuit City Stores, Inc., 317 F.3d at 668.  As indicated previously, Plaintiff's formal

education ended at junior high school.  In addition, she plainly did not have the background to

understand the terms of the agreement foisted upon her, and no one advised her to consult with a

lawyer.  (Shelton Declaration, ¶¶ 8-11).  Indeed, Ritz-Carlton did not even provide opportunity

for a consultation.  Id. at ¶ 11;  cf  Seawright v. American General Fin. Services, Inc., 2007 U.S.

App. LEXIS 26328 (6th Cir.) at *12 ("Seawright had ample time (… two months) … during

which she could have consulted with an attorney or decided she did not wish to waive her

rights").

Perhaps equally important, Ritz-Carlton provided Plaintiff no additional consideration for

the waiver of her fundamental rights.  On the contrary, Plaintiff was obligated to  sign the

agreement without more if she wished to continue her employment with Ritz-Carlton.

### E. Ritz-Carlton's Agreement Does Not Ensure Mutuality Of Obligation And Thus Cannot Be Enforced For A Lack Of Consideration

Although an exchange of promises may constitute adequate consideration, the Ritz-

Carlton agreement does not ensure the requisite mutuality of obligation and, accordingly, is not

supported by adequate consideration.  The agreement is replete with references to the employee:

"**I** must request Arbitration if **I** wish to challenge…"; "[a]rbitration is a process in which **my**

workplace issue is presented to…"; "**[m]y** arbitration shall be governed by the AAA's Rules for

Employee Dispute Resolution";  "[m]y request for Arbitration is filed with…" (Def. Exh 1 at 11;

emphasis added).   Nothing in the agreement, however  indicates that **Ritz-Carlton** has any

obligation to arbitrate disputes falling within its scope.  Accordingly, the absence of mutuality

forecloses enforcement of the Ritz-Carlton agreement.  Floss v. Ryan's Family Steak Houses,

Inc., 211 F.3d 306, 315 (6th Cir. 2000) ("absent a mutuality of obligation, a contract based on

reciprocal promises lacks consideration").

**F.  At A Minimum, , Enforcement Of The Ritz-Carlton Agreement, If Otherwise Appropriate,  Should Be Conditioned Upon An Order Requiring Ritz-Carlton To Pay The Entire Cost Of Arbitration And Allowing Plaintiff To Engage In Meaningful Discovery**

**1.  The cost of arbitration**

As indicated previously, the Court in Cole conditioned enforcement of an agreement

compelling arbitration of Title VII claims on a requirement that the employer pay the entire

costs, perhaps with the exception of reasonable filing fees.  See LaPrade v. Kidder, Peabody &

Co., Inc., 246 F.3d 702, 704 (D.C. Cir. 2001) (citing Cole for the proposition that "when a

federal statutory claim is subjected to arbitration pursuant to an arbitration agreement executed

as a condition of employment, an employee cannot be required to pay arbitration-related costs

that are analogous to a judge's salary or expenses in a traditional judicial forum").

The Ritz-Carlton agreement requires employees requesting arbitration to pay a

$50 fee "to contribute to the related expenses." (Def. Exh. 1 at 12).  The agreement does not

indicate whether the $50 "contribution" is the extent of the employee's financial obligation, or

whether the employee also is required to split the arbitrators' fees and the AAA's administrative

charges.  However, Ritz-Carlton interprets its agreement to require fee-splitting.

In light of the foregoing, and as required by <u>Cole,</u> enforcement of the Ritz-Carlton

agreement, if otherwise appropriate, must be conditioned on a requirement that Ritz-Carlton bear

the entire cost of arbitration.  And, to the extent that the Supreme Court's post-<u>Cole</u> decision in

<u>Green Tree</u> requires consideration of the aggrieved employee's financial resources, the record

herein confirms that fee-splitting would effectively deny Plaintiff access to arbitration because of

its prohibitive cost.  <u>See</u> Shelton Declaration at ¶¶ 3-7.

### 2.  <u>Meaningful discovery</u>

As indicated previously, enforcement of a mandatory arbitration agreement is

conditioned on the availability of meaningful discovery to the aggrieved employee.  <u>Cole</u>, 105

F.3d at 1482 (noting that an arbitration arrangement, to pass muster, has to satisfy several

requirements, including the opportunity "for more than minimal discovery").  The Ritz-Carlton

agreement is silent on the issue of discovery, providing simply that arbitration proceedings "shall

be governed by the AAA's Rules for Employee Dispute Resolution" (Def. Exh. 1 at 11).

The AAA Rules, in contrast to the Federal Rules of Civil Procedure, do not provide for

discovery.  On the contrary, Rule 9 of the AAA Rules merely authorizes arbitrators to order

discovery that they "consider necessary to a full and fair exploration of the issues in dispute,

**consistent with the expedited nature of arbitration"** (emphasis added).

The underscored language plainly invites arbitrators to reject or limit discovery - - an

invitation that arbitrators have accepted.  See, e.g., Miller v. Airline Pilots Ass'n. 323 U.S. App.

D.C. 386, 108 F.3d 1415, 1417 (1997) (arbitrator declined to exercise his authority under the

AAA rules to allow discovery).  And, of course, reasonable discovery, including depositions, is

critical where, as here, the employer knows the real reasons for the challenged employment

decisions and plaintiff knows only the explanation (if any) offered for the decisions.

Accordingly, aggrieved employees who do not have an opportunity to question decisionmakers

before the arbitration hearing are operating at a distinct disadvantage - - a disadvantage that is

only magnified here given the notorious difficulty of proving discrimination.

In light of the foregoing, Plaintiff requests that enforcement of the arbitration

agreement, if otherwise appropriate, be conditioned on an order allowing reasonable discovery,

including depositions.

**G. Enforcement Of The Ritz-Carlton Agreement, If Otherwise Appropriate, Also Should Be Conditioned Upon A Requirement That Ritz-Carlton Waive Limitations Defenses To Arbitration**

As indicated previously, the Ritz-Carlton agreement requires employees to request

arbitration "within one year of the management decision [they] wish to appeal."  (Def. Exh. at

12).  In contrast to Ritz-Carlton's explicit commitment "to extend applicable statute of

limitations…" for employees who need additional time "to pursue the Open A.I.R. Process," the

agreement does not similarly reflect a commitment on Ritz-Carlton's part to waive contractual

time limits for employees "requesting" arbitration.

As also indicated previously, Plaintiff's discrimination claims accrued in 2005, well over

a year ago.  Accordingly, her claims are contractually time-barred, potentially leaving her

without a remedy in an arbitral forum.

Presumably, Ritz-Carlton will be happy to waive the time bar. Out of an excess of caution, however, Plaintiff requests that a grant of relief to Ritz-Carlton be expressly conditioned on its waiver of potential time bars to arbitration.

<u>**CONCLUSION**</u>

For the reasons stated, Plaintiff requests that Ritz-Carlton's motion be denied. Alternatively, Plaintiff requests that enforcement of the arbitration agreement be conditioned on an order (1) requiring Ritz-Carlton to pay the entire cost of arbitration (other than the $50 contribution); (2) allowing the parties to engage in meaningful discovery, including depositions; and (3) requiring Ritz-Carlton to waive contractual limitations bars to arbitration.  Finally, if Ritz-Carlton's motion to compel is granted, Plaintiff's action should be stayed pending arbitration, rather than dismissed.  <u>See</u> <u>Sapiro v. Verisign</u>, 310 F. Supp. 2d at 214-15 (the FAA, 9 U.S.C. §3, provides that once arbitration is compelled, the trial should be stayed until arbitration is completed).

          Respectfully submitted,

          **LAW OFFICES OF STEVEN C. KAHN**

          By:_____/s/_____
            Steven C. Kahn
            D.C. Bar #330431
            401 E. Jefferson Street, Suite 201
            Rockville, MD 20850
            (301)-838-4113

Dated:  December 13, 2007

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY  that on December 14, 2007, a copy of  the foregoing Opposition

Memorandum and Shelton Declaration was served electronically upon Tina M. Maiolo, Carr,

Maloney, 1615 L Street, NW, Suite 500, Washington, DC 20036, counsel for Ritz-Carlton.


                                                      _____/s/_____
                                                          Steven C. Kahn

**IN THEUNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

ELAINE SHELTON

        Plaintiff                             Case No.:  07-2171 RMC

        v.

THE RITZ-CARLTON HOTEL COMPANY,  LLC, )

        Defendant.

_____

**<u>DECLARATION OF ELAINE SHELTON</u>**

   I, Elaine Shelton, hereby state:

1.  I am the Plaintiff in the above proceeding.

2.  I have been employed by Ritz-Carlton as a cook since July, 1997.

3.  In 2006, I earned approximately $31,000 with Ritz-Carlton.  <u>See</u> 2006 Form 1040A

(Exhibit 1).  For the year 2007, I expect to earn a similar amount.

4.   I have no other sources of income.

5.  I live in an apartment which I rent for $1,058 per month.  I am solely responsible for

the annual rent of $12,696.

6.  I have an 18-year old son, who is solely dependent on me.  He expects to attend

college next year, which, of course, will entail significant expense for me.

7.  If I were required to pay arbitrators' fees and expenses, which I understand can

amount to several thousands of dollars, I would not be able to afford arbitration.

8.  My formal education ended at junior high school.

9.  I have no experience or background that would have allowed me to understand the terms of Ritz-Carlton's arbitration agreement.

10. Ritz-Carlton did not advise me to consult a lawyer or other advisor before signing its agreement.

11. Ritz-Carlton did not tell me that I had time to consider whether or not to sign the agreement.

I declare under penalty of perjury that the foregoing is true and accurate.



_____/s/_____

Elaine Shelton

December 14, 2007

| Form **1040A** | Department of the Treasury-Internal Revenue Service<br>**U.S. Individual Income Tax Return**  (99)  **2006** | IRS Use Only-Do not write or staple in this space. |
|---|---|---|

**Label** (See instructions)
Use the IRS label. Otherwise, please print or type.

Name Spouse's Name (if Joint Return) Home Address City, State, and ZIP Code

ELAINE E SHELTON

3074 STATON RD SE APT 202
WASHINGTON DC 20020-

OMB No. 1545-0074

**Your social security number** 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

**Spouse's social security number**

You must enter ▲ your SSN(s) above. ▲

**Presidential Election Campaign** ▶ Check here if you, or your spouse if filing jointly, want $3 to go to this fund (see instructions) ▶ ☐ You ☐ Spouse

Checking a box below will not change your tax or refund.

**Filing status**
Check only one box.

1 ☐ Single
2 ☐ Married filing jointly (even if only one had income)
3 ☐ Married filing separately. Enter spouse's SSN above & full name here. ▶ _____
4 ☒ Head of household (with qualifying person). (See instr.) If the qualifying person is a child but not your dependent, enter this child's name here. ▶
5 ☐ Qualifying widow(er) with dependent child (See instructions)

**Exemptions**

6a ☒ Yourself. If someone can claim you as a dependent, do not check box 6a.

b ☐ Spouse

| c Dependents:<br>(1) First name    Last name | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) ✓ if qualifying child for child tax credit (see instr.) |
|---|---|---|---|
| STEVEN SHELTON | 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 | SON | |
| | | | |
| | | | |
| | | | |

Boxes checked on 6a and 6b ___ **1**

No. of children on 6c who:
• lived with you ___ **1**
• did not live with you due to divorce or separation (see instr.) ___ **0**

Dependents on 6c not entered above ___ **0**

d Total number of exemptions claimed.

RECEIVED APR 12 2007 INTERNAL REVENUE SERVICE WASHINGTON, D.C.

Add numbers on lines above ▶ **2**

**Income**

Attach Form(s) W-2 here. Also attach Form(s) 1099-R if tax was withheld.

If you did not get a W-2, see instructions.

Enclose, but do not attach, any payment.

| 7 | Wages, salaries, tips, etc. Attach Form(s) W-2. | 7 | 31,042. |
|---|---|---|---|
| 8a | Taxable interest. Attach Schedule 1 if required. | 8a | |
| b | Tax-exempt interest. Do not include on line 8a.   8b | | |
| 9a | Ordinary dividends. Attach Schedule 1 if required. | 9a | |
| b | Qualified dividends (see instructions).   9b | | |
| 10 | Capital gain distributions (see instructions). | 10 | |
| 11a | IRA distributions. 11a | 11b Taxable amount (see instructions). | 11b | |
| 12a | Pensions and annuities. 12a | 12b Taxable amount (see instructions). | 12b | |
| 13 | Unemployment compensation, Alaska Permanent Fund dividends, and jury duty pay. | 13 | |
| 14a | Social security benefits. 14a | 14b Taxable amount (see instructions). | 14b | |
| 15 | Add lines 7 through 14b (far right column). This is your **total income**. | ▶ 15 | 31,042. |

**Adjusted gross income**

| 16 | Penalty on early withdrawal of savings (see instructions). | 16 | |
|---|---|---|---|
| 17 | IRA deduction (see instructions). | 17 | |
| 18 | Student loan interest deduction (see instructions). | 18 | |
| 19 | Jury duty pay you gave your employer (see instructions). | 19 | |
| 20 | Add lines 16 through 19. These are your **total adjustments**. | 20 | |
| 21 | Subtract line 20 from line 15. This is your **adjusted gross income**. | ▶ 21 | 31,042. |

For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see Instructions.     Form **1040A** (2006)

BCA/ Copyright form software only. 2006 Universal Tax Systems, Inc. All rights reserved.     US1040A1    Rev. 1

Exhibit 1