IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ELAINE SHELTON, | ) | |
|        Plaintiff | ) | |
| | ) | Case No. 07-2171 |
| vs. | ) | |
| THE RITZ CARLTON HOTEL COMPANY, LLC | ) | |
|        Defendant | ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND COMPEL ARBITRATION**

The Defendant, the Ritz Carlton Hotel Company, LLC responds to the Plaintiff's Opposition to the Motion to Dismiss and Compel Arbitration. In support of its response, Defendant refers the Court to the attached memoranda of points and authorities.

Respectfully submitted,

*/s/ Tina M. Maiolo*

By:_____
Tina M. Maiolo, Esq., #98745
1615 L Street, NW, Suite 500
Washington, DC 20036
(202)210-5585/(202)310-5555
tm@carrmaloney.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 27th day of December 2007, a copy of the foregoing was sent via the court's electronic filing system first-class mail, post prepaid, to Steven C. Kahn, 5028 Wisconsin Avenue, Suite 300, Washington, DC 20016, Attorney for Plaintiff.

*/s/ Tina M. Maiolo*

_____
Tina M. Maiolo, Esq.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ELAINE SHELTON, )<br> )<br>　　　　Plaintiff )<br> )　　Case No. 07-2171<br>vs. )<br> )<br>THE RITZ CARLTON HOTEL )<br>　　COMPANY, LLC )<br> )<br>　　　　Defendant )<br> )<br>_____) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND COMPEL ARBITRATION**

Despite having signed an employment agreement in June 2005 that includes a mandatory arbitration agreement ("Agreement"), Plaintiff filed a Complaint against Defendant on October 23, 2007. On December 4, 2007, Defendant filed a Motion to Dismiss and Compel Arbitration. Plaintiff then filed an Opposition to the Defendant's Motion on December 14, 2007. This pleading is being filed in response to Plaintiff's Opposition.

**I. Legal Argument**

Plaintiff puts forth several arguments to the Court in opposing Defendant's Motion to Dismiss and to Compel Arbitration. Plaintiff's arguments are weak attempts to thwart a process to which the Plaintiff has bound herself.

Plaintiff incorrectly alleges that promotion disputes are excluded from arbitration. As Plaintiff states, the Agreement indicates that Peer Review is not available for management decisions regarding promotion/transfer decisions. Exhibit 1, at p. 8. Plaintiff reasons that,

because an employee seeking to challenge a denied promotion does not have Peer Review access, then, it follows, that the employee does not have access to arbitration. This deduction is erroneous. In Plaintiff's Complaint filed against the Defendant, the sole count alleged is that Defendant discriminatorily denied Plaintiff a promotion based upon the Plaintiff's gender and race. Under the terms of the Agreement, an employee must request arbitration if she wishes to challenge management decisions that she believes are discriminatory or retaliatory. *Id.* at p. 11. So, although this matter may not have been appropriate for Peer Review, it is appropriate for arbitration since it is based upon an allegedly discriminatory act of management. Furthermore, the Agreement is described as "flexible, accessible and confidential." *Id*. at p. 5. Should any employee have any questions regarding the Agreement, the Agreement provides that she speak with her manager or Director of Human Resources.

  Next, Plaintiff asserts that, since the Agreement was not in effect in May 2005, it is therefore not enforceable. Plaintiff was allegedly denied a promotion in May 2005 and then again in September 2005. The parties entered into the Agreement in June 2005. Under the Agreement, an employee has up to one year after a management decision to request arbitration. Although the Agreement was signed one month after the first alleged discriminatory act, the Agreement indicates that an employee may request an Arbitration hearing within one year of the management decision the employee wishes to appeal. *Id*. at p. 12. Therefore, Plaintiff could have filed for arbitration regarding the May incident any time after the Agreement was signed in June 2005. Plaintiff suggests that, at most, she may be required to arbitrate the claim that arose in September, but not the May 2005 claim. Plaintiff, however, did not take action on her alleged discrimination claim until March 6, 2006. The Agreement, signed in June 2005, was therefore

applicable when Plaintiff first came to believe her promotion was discriminatory. As a result, the Agreement was in effect at all relevant times and should have been used.

According to *AT&T Technologies, Inc. v. Communication Workers of America*, 475 U.S. 643, 650 (1986), cited in the Plaintiff's Opposition, it has been established that where [a] contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of America v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-83 (1960). See also *Gateway Coal Co. v. Mine Workers*, 414 U.S. 368, 377-378 (1974). As mentioned, the Agreement allows an employee to request an Arbitration hearing within one year of the management decision she wishes to appeal. Asserted disputes happened in May 2005 and in September 2005. The Agreement is therefore susceptible of an interpretation that both the May and September incidents are covered within the arbitration clause.

In addition, Plaintiff claims that she did not knowingly and voluntarily waive her constitutional right to a jury trial. She further asserts that the terms of the Agreement were "foisted upon her" and that she did not have the background to understand the terms of the Agreement. However, one who signs a contract has a duty to read it and is obligated according to its terms." *Pers Travel, Inc. v. Canal Square Assocs.*, 804 A.2d 1108, 1110-11 (D.C.2002). The Agreement clearly reads that "I understand that by filing this agreement, I am waiving the ability to file a lawsuit to challenge any termination or management decision that is covered by this Arbitration provision." In addition, the Agreement suggests that an employee contact her

manager or Director of Human Resources should she have any questions regarding the Agreement.

Plaintiff also argues that the Agreement requires Plaintiff to pay a share of the arbitrators' fees and expenses. Today the vast majority of the Circuit Courts employ a case-by-case analysis when examining whether a fee-splitting arbitration agreement is invalid, and focus on the record to determine whether the amount of the arbitration costs could foreclose the employee from pursuing arbitration. *Nelson v. Insignia/Esg, Inc*. 215 F.Supp.2d 143 (D.D.C.,2002). In *Cole v. Burns International Security Services,* 105 F.3d 1365 (D.C. 1997), the Court stated that while employees "may be required to assume the cost of filing fees and other administrative expenses ... where arbitration has been imposed by the employer and occurs only at the option of the employer-arbitrators' fees should be borne solely by the employer." Unlike in *Cole* in which the Plaintiff was required to pay a $500 filing fee in addition to $500 to $1,000 per day in arbitrator fees, the Agreement in this case requests only a $50 filing fee from the employee.

In addition, Plaintiff asserts that, because the Agreement is silent on the issue of discovery, the Agreement is not enforceable. In *Cole,* however, the Court stated that silence with respect to a cost-splitting provision, would not render an arbitration clause unenforceable because an interpretation that renders a contract lawful is preferable to one that renders it unlawful. *Id.* at 1485. In the case at bar, with regard to discovery, the Agreement provides that the Arbitration shall be governed by the AAA's Rules for Employee Dispute Resolution. Therefore the Agreement is not silent on the issue of discovery. Under AAA's rules, discovery is permitted. It is therefore premature for Plaintiff to argue that, under AAA's rules, arbitrators may reject discovery.

For the reasons stated above, this Court should uphold the parties' valid and enforceable mandatory arbitration agreement. In addition, the Court should dismiss Plaintiff's Complaint and compel Plaintiff to proceed with mandatory arbitration as set forth in Exhibit 1.

Respectfully submitted,

*[signature: Tina M. Maiolo]*

By:_____
 Tina M. Maiolo, Esq., #98745
 1615 L Street, NW
 Suite 500
 Washington, DC 20036
 (202)210-5585/(202)310.5555
 tm@carrmaloney.com

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 27th day of December 2007, a copy of the foregoing was sent via the court's electronic filing system first-class mail, post prepaid, to Steven C. Kahn, 5028 Wisconsin Avenue, Suite 300, Washington, DC 20016, Attorney for Plaintiff.

*[signature: Tina M. Maiolo]*
_____
Tina M. Maiolo, Esq.

Revolutionizing
The Way We Work

THE RITZ-CARLTON EMPLOYEE AGREEMENT

# My Rights

During my employment with The Ritz-Carlton Hotel Company, L.L.C. ("The Ritz-Carlton") I have the following rights:

- The right to know the standards of my job
- The right to know how I am performing in my job
- The right to periodic performance reviews and an explanation of them
- The right to see my personnel file
- The right to job training for my position
- The right to request retraining
- The right to be involved in the planning of the work that affects me
- The right to a competitive compensation and benefits plan
- The right to a quality work environment
- The right to be considered for a promotion to an available position for which I am eligible and qualified
- The right to raise concerns without fear of reprisal
- The right to be treated fairly and professionally
- The right to The Ritz-Carlton Fair Discipline Pact
- The right to The Ritz-Carlton Open Appeal and Issue Resolution Process

2

# Fair Discipline Pact

I agree to perform my duties in a professional manner and to provide excellent service consistent with The Ritz-Carlton Credo and service philosophy.

If I fail to meet expected work performance, behavior or conduct standards at any point after the successful completion of my 60-day/90-day Orientation Period, as determined by my individual property:

- My below-standard work performance, behavior or conduct standards will be documented
- The disciplinary process will be fair
- The right to be provided the progressive discipline process outlined in the Employee Handbook will be applied unless I engage in a major breach of standard or conduct

I understand that a major violation of a work performance, behavior or conduct standard will result in immediate termination. Examples of major violations include fighting, theft, violation of The Ritz-Carlton policy prohibiting harassment and unprofessional conduct, use of drugs, and soliciting gratuities from guests (this list is not all inclusive and I will refer to the Employee Handbook for additional examples). In the event of a major violation:

- I will be suspended pending a fair and complete investigation.
- If I am terminated, I will be provided with the reasons for my termination and will be able to pursue my rights under the Open Appeal and Issue Resolution Process.

3

## Open Appeal & Issue Resolution Process

The Ritz-Carlton is committed to resolving issues that arise in the workplace. The Open Appeal & Issue Resolution ("Open A.I.R.") Process has been developed specifically to assist me with this by providing step-by-step direction that is easy to understand. Each step of the process is designed to keep the lines of communication open while pursuing all possible avenues to resolve issues. The process is flexible, accessible and confidential. If I have a problem, I will pursue the Open A.I.R. Process.

The Open Appeal & Issue Resolution ("Open A.I.R.") Process consists of three stages:

1. Open Door Process
2. Peer Review
3. Arbitration



5

## Stage One: Open Door Process

The Ritz-Carlton and I agree to open communication and fairness. The Open Door Process means that I have an opportunity to resolve workplace issues early and informally. It ensures that all doors are progressively open to me. It gives me the right to talk to my immediate supervisor or manager as described below without fear of retaliation. Management and Guidance Team members will attempt to resolve my concerns.

I will share my concerns through the Open Door Process as follows:

### First Step
I will attempt to resolve my workplace concern with my immediate supervisor.

### Second Step
If I am not satisfied with my supervisor's response or my supervisor is part of my issue, I will attempt to resolve my workplace issue with the next level of management, up to my Division Head.

### Third Step
If my Division Head is unable to resolve my workplace issue, I will talk with my General Manager.

At any time, I may by-pass any step in the Open Door Process and speak directly with my Director of Human Resources. Guidance Team members may pursue the Open Door Process by contacting Corporate Human Resources.

6

## Stage Two: Peer Review Panel

If the Open Door Process does not resolve my workplace issue and I have completed my orientation period, I shall seek further help through the Peer Review Panel. This gives me another opportunity to resolve my workplace issue.

## What is Peer Review?

Peer Review is a more formal means of resolving my workplace issue that allows me to have a private and confidential hearing before a panel of employees who have been trained and certified to provide honest and fair decisions. I will select the five panelists through a random drawing of names of Peer Review panelists certified by The Ritz-Carlton.





## Can Peer Review be used for any issue?

Peer Review is designed to review management decisions that have been made, such as disciplinary actions up to and including termination. The Peer Review Panel will hear appeals involving the application of policies and established practices. Peer Review is not available for management decisions regarding:

- Performance appraisal ratings
- Pay and benefits
- Promotion/transfer decisions
- The results of a drug test sponsored by The Ritz-Carlton
- Disciplinary actions taken for violations of the policy on Harassment and Professional Conduct

The process is not for resolving issues, such as personality conflicts, that do not involve a specific management decision. Unless the issue involves termination of employment, Peer Review may only be used when I have used the Open Door Process first. The Senior Vice President of Human Resources may designate additional exceptions to the Peer Review Process.

## Who are the panelists/members of the Peer Review Panel?

Peer Review Panel members are employees throughout my property who volunteered to participate in this program. They have been certified in the Peer Review Panel process and received training to help them make honest and fair decisions. The five panelists of the Peer Review Panel are selected randomly by me from names of certified panelists provided by the Director of Human Resources. A member of the Panel may not be directly involved in my workplace issue. Also, members of the Panel may not have a supervisory relationship or work in the same department with me or with other members of the Panel. Panelists sign a confidentiality agreement prior to participating in the Panel hearing. For a line employee, the Peer Review Panel would consist of three line employees and two managers. If a manager has requested a Peer Review, the Panel will be made up of three managers and two Guidance Team members. More detailed selection criteria and procedures are available from the Human Resources Department.

## How do I request a Peer Review?

After I have followed the Open Door Process, I will complete a Peer Review Request Form and submit it to the Human Resources Department. I may ask for help in completing the form from the Director of Human Resources or another employee within The Ritz-Carlton. I must request a Peer Review Panel hearing within thirty (30) days of the incident that I wish to address. Within five (5) business days of submitting the Peer Review Request Form, the Director of Human Resources or his/her representative will make arrangements for me to select the five Peer Review Panelists.

9

## What happens at a Peer Review?

Peer Review allows me to have a confidential hearing with the Panel, which will listen to both parties involved in my issue. The Panel will provide a fair and honest decision. The Panel may meet separately with each party before arriving at a decision. Important points to note are:

- I may be assisted by a current employee of The Ritz-Carlton. This is an internal process and, therefore, external assistance is not permitted.
- I shall have an opportunity to present documentation that relates to my workplace issue.
- The Panel reviews the issue and ensures The Ritz-Carlton policies or established practices were followed thoroughly, correctly and consistently. The Peer Review Panel can either:

  1. Overturn the original management decision which led to my workplace issue
  2. Modify the management decision in some way to make it more consistent with The Ritz-Carlton's policies and established practices
  3. Allow the original management decision to remain in effect

The Panel's decision is reached confidentially through a "secret ballot" conducted by a trained Peer Review Panel Facilitator, usually the Director of Human Resources or a Human Resources Representative. The Facilitator does not participate in the vote or give any substantive input on the issue before the Panel. For the Panel's decision to apply, the decision must be supported by a majority (at least three) of the Panel's votes. The Panel will notify me in writing of their decision within five (5) business days of completing the voting process.

The Ritz-Carlton and I agree that all information discussed during the Peer Review Panel's hearing is completely confidential.



## Stage Three: Arbitration

I must request Arbitration if I wish to challenge my termination for any reason or for management decisions that I believe are discriminatory or retaliatory. Arbitration is a process in which my workplace issue is presented to a neutral third party, the arbitrator, for a final and binding decision. The arbitrator, who is provided by the American Arbitration Association ("AAA") runs the privately held proceedings. My Arbitration shall be governed by the AAA's Rules for Employee Dispute Resolution.

## What happens at Arbitration?

My request for Arbitration is filed with a local AAA office. The AAA office offers a list of qualified local arbitrators and each party numbers the list in order of preference. An arbitrator is selected based upon the parties' preferences. AAA arranges a hearing date. At the hearing, both The Ritz-Carlton and I have an opportunity to present our respective positions on my workplace issue. Testimony is given, documents are exchanged, and witnesses are questioned and cross-examined. The arbitrator will make a decision after both The Ritz-Carlton and I have presented our evidence and arguments. If the arbitrator rules in my favor, I may be reinstated and/or awarded additional remedies consistent with the laws governing The Ritz-Carlton.

11

Case 1:07-cv-02171-RMC   Document 7-2   Filed 12/27/2007   Page 11 of 13

## How do I apply for Arbitration?

To apply for Arbitration I must complete an Arbitration Request Form. I will be required to pay a $50.00 fee to contribute to the related expenses. I may consult an attorney or another advisor of my choice to participate in the Arbitration at my own expense.

The arbitrator shall be authorized to award whatever remedies are allowed by law.

I may request an Arbitration hearing within one year of the management decision I wish to appeal.

I understand that by signing this agreement, I am waiving the ability to file a lawsuit to challenge any termination or management decision that is covered by this Arbitration provision. For any issues that are not covered by the Arbitration provision, I agree to exhaust every other step in the Open A.I.R. Process (as applicable) before filing a lawsuit. The Ritz-Carlton agrees to extend applicable statute of limitations and any other time-conditional filing requirements for the length of time that it takes to pursue the Open A.I.R. Process.



12

# The Ritz-Carlton Employee Agreement

I am proud to join The Ritz-Carlton. Both The Ritz-Carlton and I are committed to establishing a long and successful relationship. I understand that Ritz-Carlton employees are Ladies and Gentlemen providing excellent service to our guests. I agree to this Employee Agreement, and to uphold The Ritz-Carlton standards. In return, The Ritz-Carlton promises to treat me with dignity and respect. Upon the successful completion of my 60-day/90-day Orientation Period, as determined by my individual property, I will receive the rights and benefits in this Employee Agreement. I will read this Agreement carefully and, if I have any questions, I will ask my Manager or the Director of Human Resources.

The Ritz-Carlton and I agree as follows:

My name is

_____

My start date is _____

My starting rate of pay is _____

Agreement between:

Print Name (Employee) _____

Signature _____

Date _____


Print Name (The Ritz-Carlton) _____

Signature _____

Date _____

"At The Ritz-Carlton, our Ladies and Gentlemen are the most important resource in our service commitment to our guests. By applying the principles of trust, honesty, respect, integrity and commitment, we nurture and maximize talent to the benefit of each individual and the company. The Ritz-Carlton fosters a work environment where diversity is valued, quality of life is enhanced, individual aspirations are fulfilled, and The Ritz-Carlton mystique is strengthened."