IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELAINE SHELTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: 07-2171 (RMC) |
| vs. ) | |
| ) | |
| THE RITZ CARLTON HOTEL ) | |
| COMPANY, LLC ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MOTION TO RECONSIDER IN PART OR, IN THE ALTERNATIVE,
MOTION FOR CERTIFICATION FOR INTERLOCUTORY APPEAL**

Pursuant to the Federal Arbitration Agreement 9 U.S.C. §1 *et seq.*, this Court granted Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction as to Plaintiff's claim for failure to promote her to the position of Cook I in the Gardemanger Kitchen in September 2005.[1] *See* Memorandum and Order, Exhibit 1.

Notwithstanding its own finding that it lacked subject matter jurisdiction over Plaintiff's claim for failure to promote arising out of the September 2005 position, this Court wrongfully held that Defendant waived its defense that Plaintiff failed to satisfy the valid and binding terms of the arbitration agreement by failing to request arbitration within the one year limit imposed, and that Defendant is forbidden from raising the valid defense during arbitration. This Court wrongfully deemed Defendant to have waived this valid defense even though: (1) this Court does not have subject matter jurisdiction over this claim or the interpretation of the terms and conditions of the arbitration agreement; and (2) Defendant was not required to plead its defenses in a valid motion to dismiss for lack of subject matter jurisdiction. Instead, Defendant has the

---

[1] This Court denied Defendant's motion as to Plaintiff's failure to promote arising out of a May, 2005 position, finding that the binding arbitration agreement was not in effect at the time the promotion was denied.

right to raise the valid defense either through a 12(b)(6) motion to dismiss or a responsive pleading pursuant to the rules *of the American Arbitration Association* – not this Court. Accordingly, Defendant respectfully requests this Court reconsider its ruling that Defendant waived its defense that Plaintiff failed to request arbitration in a timely manner or, in the alternative, certify this ruling for interlocutory appeal. In further support of this motion, Defendant asserts as follows:

If a Court does not have subject matter jurisdiction over a claim, it cannot then rule upon the merits of the action - in this case, whether Defendant waived a defense it has not had ample opportunity to raise. "Without jurisdiction the court cannot proceed at all in any cause." *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). "Federal jurisdiction is not so ambidextrous as to permit a district court to dismiss a suit for want of jurisdiction with one hand and to decide the merits with the other. A federal district court concluding lack of jurisdiction should apply its brakes, cease and desist the proceedings, and shun advisory opinions. To do otherwise would be in defiance of its jurisdictional fealty." *See, e.g., Ehm v. National R.R. Passenger Corp.*, 732 F.2d 1250, 1257 (5th Cir.1984). More importantly, it has been stated: "If the allegations [of a complaint] do not survive the jurisdictional attack, then there is no jurisdiction even to consider the other claims . . ." *See, e.g., Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 512 (5th Cir.1980). Once this Court determined it did not have subject matter jurisdiction over Plaintiff's September 2005 failure to promote claim, it should have ceased and desisted from any other rulings. This Court should not have considered whether Defendant waived its affirmative defense of timeliness.

Moreover, because this court lacks subject matter jurisdiction, Defendant's affirmative defense of timeliness is properly addressed in arbitration. Issues other than the '[ ]basic question

of whether the parties have agreed to arbitrate the dispute [. . . ] **including allegations of waiver, delay, or like defenses, are for the arbitrators to decide**' " *Agrocomplect, AD v. Republic of Iraq*, 524 F.Supp.2d 16 D.D.C.,2007 citing and quoting *Walnut Street Sec., Inc. v. Lisk*, 497 F.Supp.2d 714, 719 (M.D.N.C.2007)(emphasis added).

Also, had Defendant raised the issue of timeliness, it would have been improper. To raise a defense of untimeliness, Defendant would have had to file a Rule 12(b)(6) motion to dismiss for failure to state a claim with its Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. This Court would have been precluded from considering Defendant's Rule 12(b)(6) motion once it determined that it lacked subject matter jurisdiction over the claim. If the Court lacks subject matter jurisdiction, it could not consider the 12(b)(6) defenses. *See Anderson v. Wells Fargo Financial Acceptance Pennsylvania, Inc.* 269 Neb. 595, 694 N.W.2d 625, 2005. ("It Is Improper to Consider Motion Based on Rule 12(b)(6) Grounds Where Court Concludes It Lacks Subject Matter Jurisdiction Under Rule 12(b)(1)).

Moreover, Defendant was not required to raise the timeliness defense at this juncture. It is a valid defense based upon the terms and conditions of the arbitration agreement, which is to be interpreted and applied by the American Arbitration Association. In light of the fact that Plaintiff's claim is bound by the Arbitration agreement, Plaintiff must file a claim with AAA pursuant to its rules. Defendant will then have the opportunity to address its defenses before that proper forum. This Court, therefore, should reconsider its ruling that Defendant waived its defense of timeliness and allow the parties to address that issue in the proper forum – arbitration.

Alternatively, Defendant respectfully requests this Court certify this issue for interlocutory appeal because it involves a procedural determination that significantly impacts the action. 28 U.S.C.A. §1292(b). Furthermore, interlocutory appeal is warranted because this

court's decision to rule that defendant waived an affirmative defense by failing to raise it in a motion to dismiss for lack of subject matter jurisdiction conflicts with decisions in other circuits. *See City Stores Co. v. Lerner Shops,* 410 F.2d 1010, 1011 (D.C.Cir.1969) (certification is appropriate where other courts have adopted conflicting positions regarding the issue of law proposed for certification).

Respectfully submitted,

*/s/ Tina M. Maiolo*

By:_____
Tina M. Maiolo, Esq., #98745
1615 L Street, NW, Suite 500
Washington, DC 20036
(202)310-5585/(202)310-5555 (FAX)
tm@carrmaloney.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 19th day of May, 2008, a copy of the foregoing was sent via first class mail, postage prepaid to:

Steven C. Kahn, Esq.
5028 Wisconsin Avenue, Suite 300
Washington, DC 20016
(301) 838-4113/(301) 656-6081 (FAX)

*/s/ Tina M. Maiolo*
_____
Tina M. Maiolo, Esq.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ELAINE SHELTON, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 07-2171 (RMC) |
| THE RITZ CARLTON HOTEL COMPANY, LLC, | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION

Elaine Shelton is an African American woman employed as a cook at The Ritz Carlton Hotel ("The Ritz") in Washington, D.C. She alleges that she twice applied for a promotion and The Ritz denied her application based on her race and gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f). The Ritz seeks dismissal, claiming that Ms. Shelton must arbitrate. Ms. Shelton opposes. As explained below, the Court grants the motion in part and denies it in part, as the parties' arbitration agreement applies only to one of the alleged incidents of discrimination.

I. FACTS

Ms. Shelton began working at The Ritz on 22d Street in Washington, D.C. in September 2000.[1] The Ritz operates several departments that employ cooks: an Employee Dining Room, a Banquet Kitchen, the Gardemanger Kitchen, and In Room Dining. The cooking hierarchy

---

[1] Previously, starting in July 1997, Ms. Shelton was employed as a cook by Marriott International, Inc., which now owns The Ritz.

in these departments from top down includes an Executive Chef, two Sous Chefs, Cook I, Cook II, and Cook III. Ms. Shelton was hired as a Cook III, and within one month, The Ritz promoted her to the position of Cook II. As a Cook II, Ms. Shelton worked primarily in the Employee Dining Room. Her duties included prepping, cooking, developing menus and recipes, and tracking inventory. Sometimes in the absence of a chef she took a "lead role" in the kitchen. Compl. ¶ 8.

In May 2005, Ms. Shelton applied for an opening as a Cook I in the Banquet Kitchen. The Ritz did not interview her or select her for the position. Instead, The Ritz hired an Hispanic male. Ms. Shelton alleges, "Ritz-Carlton filled the opening with an Hispanic male, an out-of-state candidate who was subsequently forced to resign because of poor work performance." *Id*. ¶ 10.

In September 2005, Ms. Shelton applied for the position of Cook I in the Gardemanger Kitchen. She alleges that she was the sole applicant for the job. *Id*. ¶ 11. The Executive Chef, a Caucasian male, told her that as part of the application process she would be required to participate in a tasting test and her food would be judged based on taste, presentation, food temperature, and organizational skills in preparing the meal. The Sous Chef, an Hispanic male, administered the test. He complained that she did not cut the asparagus properly or use the right plate for her presentation. Ms. Shelton alleges that no other applicant for a Cook I position had ever been required to take a tasting test before. The Ritz then withdrew the job posting for the Cook I in the Gardemanger Kitchen. Instead, The Ritz created a new Junior Sous Chef position and hired a white male for the position. Ms. Shelton contends that The Ritz has never hired an African-American as a Cook I at its 22d Street location. *Id*. ¶ 16.

Ms. Shelton filed a charge with the Equal Employment Opportunity Commission (the "EEOC"), alleging that The Ritz denied her promotion to the May 2005 and the September 2005

Cook I positions based on her race and gender. The EEOC investigated and on May 29, 2007, issued a Determination that The Ritz discriminated against Ms. Shelton in violation of Title VII and asked The Ritz to conciliate. The Ritz declined the EEOC's invitation to conciliate, and on July 25, 2007, the EEOC issued a notice of right to sue. Within 90 days, on October 23, 2007, Ms. Shelton filed a Complaint in D.C. Superior Court, alleging a single count of discrimination under Title VII.[2]

On November 30, 2007, the Ritz removed this suit to federal district court, and now The Ritz seeks dismissal based on lack of jurisdiction, contending that the parties are bound by an agreement to arbitrate. On June 17, 2005, Ms. Shelton had signed an employment agreement. The agreement provides for arbitration of employment-related disputes as follows:

> I must request Arbitration if I wish to challenge my termination for any reason or for management decisions that I believe are discriminatory or retaliatory. Arbitration is a process in which my workplace issue is presented to a neutral third party, the arbitrator, for a final and binding decision. The arbitrator, who is provided by the American Arbitration Association ("AAA") runs the privately held proceedings. My Arbitration shall be governed by the AAA's Rules fo Employee Dispute Resolution.
>
> . . . .
>
> To apply for Arbitration I must complete an Arbitration Request Form. I will be required to pay a $50.00 fee to contribute to the related expenses. I may consult an attorney or another advisor of my choice to participate in the Arbitration at my own expense. The Arbitrator shall be authorized to award whatever remedies are allowed by law. I may request an Arbitration hearing within one year of the management decision I wish to appeal. I understand that by

---

[2] In her Complaint, Ms. Shelton also alleges that in 2004 she applied for a transfer and promotion to the position of Employee Dining Room supervisor at The Ritz's Georgetown location. She did not assert a claim of discrimination based on the 2004 denial of promotion before the EEOC, and thus she cannot bring that claim here due to a failure to exhaust administrative remedies. *Bowden v. U.S.*, 106 F.3d 433, 437 (D.C. Cir. 1997) (a Title VII plaintiff must exhaust administrative remedies by filing a timely charge with the EEOC).

> signing this agreement, I am waiving the ability to file a lawsuit to
> challenge any termination or management decision that is covered by
> this Arbitration provision.

Def.'s Mot. to Dismiss, Ex. 1. at 11-12.  Ms. Shelton contends that she is not bound by this arbitration provision.

## II.  MOTION TO DISMISS STANDARD

The Ritz seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1), lack of subject matter jurisdiction.  Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Because subject matter jurisdiction is an Article III as well as a statutory requirement, "no action of the parties can confer subject[]matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003).  On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject matter jurisdiction. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999); *see also McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936).

Because subject matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003).  Moreover, the court is not limited to the allegations contained in the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987).  Instead, to determine whether it has jurisdiction over the claim, the court may consider materials outside the pleadings. *Herbert v. Nat'l*

*Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

### III. ANALYSIS

The question in this case is whether Ms. Shelton is bound by the terms of her June 2005 employment agreement to arbitrate both of her claims of discrimination, the May 2005 claim and the September 2005 claim. The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1-16, was passed by Congress "to establish an alternative to the complications of litigation." *Revere Copper & Brass Inc. v. Overseas Private Inv. Corp.*, 628 F.2d 81, 83 (D.C. Cir. 1980). Further, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 241 (1962); *accord AT&T Tech., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986). "By agreeing to arbitrate, a party 'trades the procedures and opportunity for review of the court [ ] for the simplicity, informality, and expedition of arbitration." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991). An individual who agrees to arbitrate her claims does not forego her substantive rights afforded by statute; she merely submits to resolution in an arbitral rather than a judicial forum. *Id.* at 26.

When a party seeks arbitration, first the Court must determine whether there is a valid agreement to arbitrate. *Nelson v. Insignia/Esg, Inc.*, 215 F. Supp. 2d 143, 150 (D.D.C. 2002). Then, the Court must determine whether the specific dispute falls within the scope of the arbitration agreement. *Id.* To determine whether there is a valid arbitration agreement, federal courts apply ordinary state law contract principles. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Although the parties have failed to address the choice of law question, the Court concludes that D.C. law controls, because the formation and the performance of the contract occurred here, Ms.

Shelton is a D.C. resident, and The Ritz does business in D.C. *See Nelson*, 215 F. Supp. 2d at 150 (under D.C. choice of law rules, the law of the jurisdiction with the most substantial interest in the matter applies). Under D.C. law, the party asserting the existence of the contract has the burden of proving its existence, that there was a meeting of the minds as to all material respects. *Bailey v. Fed. Nat'l Mortgage Ass'n*, 209 F.3d 740, 746 (D.C. Cir. 2000). The party resisting arbitration bears the burden of proving that the claims asserted are not suited to or intended for arbitration. *Nelson*, 215 F. Supp. 2d at 150 (citing *Green Tree Financial Corp. v. Randolph*, 531 U.S. 79, 91 (2000)).

### A. Arbitration of May 2005 Claim Not Required

The Ritz asserts that the agreement to arbitrate set forth in the June 2005 employment contract requires Ms. Shelton to arbitrate her May 2005 discrimination claim. The June 2005 contract, however, was not in effect in May 2005. Ms. Shelton did not execute the employment agreement until June 17, 2005. Further, the employment agreement does not contain any language that could be construed as indicating an intent to apply the agreement retroactively.

The Ritz argues that because the arbitration agreement provides that an employee "may request an Arbitration hearing within one year of the management decision" the employee wishes to appeal, that the arbitration agreement should apply to any dispute between The Ritz and Ms. Shelton for the year prior to the execution of the arbitration agreement. The Court does not interpret the one-year time bar as a provision for retroactive application of the contract. While The Ritz is correct that doubts regarding an arbitration provision must be resolved in favor of coverage, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983), the contract at issue here does not give rise to doubts. When a contract is not ambiguous, a court must interpret it according to its plain meaning. *May v. Continental Cas. Co.*, 936 A.2d 747, 751 (D.C. 2007). "A

contract is not ambiguous merely because the parties disagree over its meaning. Rather, a contract is ambiguous if, on its face, it has more than one reasonable interpretation." *Id*. (citations omitted). The contract at issue here is not ambiguous on its face. The one-year provision merely imposes a time bar on claims; it does not provide for retroactive application of the contract itself. Because Ms. Shelton cannot be required to submit her May 2005 claim to arbitration under a June 2005 agreement, the May 2005 failure to promote claim may proceed in this Court.

### B. Arbitration of September 2005 Claim Required

With regard to Ms. Shelton's September 2005 claim, The Ritz has met its burden of showing a valid agreement to arbitrate, despite Ms. Shelton's numerous arguments to the contrary.

First, Ms. Shelton argues that the employment agreement provides for a three-step dispute resolution process, that promotion disputes are excluded from step two, and she reasons, they thus must be excluded from step three. An examination of the agreement shows this logic to be faulty. The agreement provides for a three stage process — the "Open Door Process," "Peer Review," and arbitration. Under the agreement, the "Open Door Process means that [employees] have an opportunity to resolve workplace issues early and informally." Def.'s Mot. to Dismiss, Ex. 1 at 6. This step does not define "workplace" issues; it provides that employees may attempt to resolve issues without fear of retaliation by speaking first to their supervisor, then to the next level of management through the Division Head, and then to the General Manager. The employee may by-pass any step and speak to the Director of Human Resources. *Id*. Stage two, Peer Review, allows for formal dispute resolution before a panel of employees. *Id*. at 7. Peer Review expressly is "not available" for management decisions regarding promotion and transfer decisions. *Id*. at 8. Stage three, arbitration, provides, "I must request Arbitration if I wish to challenge my termination for any

reason or for management decisions that I believe are discriminatory or retaliatory." *Id*. at 11.  Thus, although the contract excludes promotion decisions from the Peer Review process, it includes such decisions in the arbitration requirement.  The phrase "management decisions that I believe are discriminatory" is broad enough to include a claim of discriminatory denial of promotion.

Second, Ms. Shelton argues that she did not knowingly and voluntarily waive her right to a jury trial.[3]  She asserts that due to her junior high education, she lacked the background to understand the contract.  Pl.'s Resp. at 9.  The Court must reject this argument as under both D.C. and federal law one who signs a contract has a duty to read it and is obligated according to its terms.  *Paterson v. Reeves*, 304 F.2d 950, 951 (D.C. Cir. 1962); *Pers Travel, Inc. v. Canal Square Assoc.*, 804 A.2d 1108, 1110 (D.C. 2002).  A signature on a contract indicates a mutuality of assent to which a party is bound unless she can show some special circumstance such as fraud, duress, or mutual mistake.  *Nelson*, 215 F. Supp. 2d at 151-52.  An employer has no special duty to ensure that its employees understand the implications of signing an arbitration agreement.  *Id*.  The employment contract provides, "I understand that by signing this agreement, I am waiving the ability to file a lawsuit to challenge any termination or management decision that is covered by this Arbitration provision."  Def.'s Mot. to Dismiss, Ex. 1. at 12.  Ms. Shelton had a duty to read the employment agreement and she is obligated by its provisions, including the agreement waiving her right to file a lawsuit and to trial by jury.  She does not allege fraud, duress, or mutual mistake.

Third, Ms. Shelton contends that the agreement cannot be enforced because it is an adhesion contract — she was required to sign it to continue her existing employment.  Pl.'s Resp.

---

[3] While an individual has a right to a jury trial, she also has the right to contract to seek relief in another way.

at 9-10. An adhesion contract is one prepared by the party with greater bargaining power and presented to the other party on a take it or leave it basis. Black's Law Dictionary (8th ed.) at 342. "Mere inequality in bargaining power, however, is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context." *Gilmer*, 500 U.S. at 33. Arbitration agreements are enforceable unless there are grounds in law or equity for revocation. *Id*. Ms. Shelton and The Ritz entered into a valid at-will employment contract. *See Bell v. Ivory*, 966 F. Supp. 23, 29 (D.D.C. 1997) (under D.C. law, the mutual promises to employ and serve creates a contract terminable at will by either party). Ms. Shelton has asserted no grounds for revocation, and she has not shown that the contract is unenforceable.[4]

Accordingly, the Court will grant in part The Ritz's motion to dismiss, and will dismiss Ms. Shelton's discrimination claim based on the September 2005 failure to promote.

### C. Limitations on Arbitration

Ms. Shelton argues that to the extent arbitration is required, the Court should order certain limitations. She notes that she cannot be required to pay arbitration fees and expenses under *Cole v. Burns Internat'l Sec. Servs.*, 105 F.3d 1465 (D.C. Cir. 1997). Under *Cole*, an employee cannot be required to pay for the services of an arbitrator or judge in order to pursue statutory rights under Title VII. The arbitration contract in *Cole* was silent with regard to the payment of arbitration fees. The court construed the ambiguity in favor of the employee and required the employer to pay the entire arbitration fee. *Id*. at 1486; *see also Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 90-

---

[4] Ms. Shelton also argues that the contract lacks mutuality because it requires the employee to arbitrate but it does not require The Ritz to arbitrate. This contention is without merit. The agreement requires the employee, and not The Ritz, to arbitrate, as the right to bring a claim of discriminatory or retaliatory management decisions belongs to the employee, not to the employer.

91 (2000) (arbitration agreement that was silent as to costs was enforceable unless the costs would be so great as to preclude an employee from enforcing her statutory rights)).

The arbitration contract between Ms. Shelton and The Ritz provides that the employee must pay a $50 fee "to contribute to the related expenses." Ms. Shelton indicates in detail that she cannot afford arbitration fees and expenses in excess of this amount. Pl.'s Resp., Ex. 1 Shelton Aff.[5] Because the agreement is silent as to who pays arbitration fees and expenses in excess of this $50 (and Ms. Shelton cannot afford more than this), the Court construes the ambiguity in favor of Ms. Shelton. The Ritz shall be solely responsible for the payment of all arbitration fees and expenses in excess of $50.

Ms. Shelton also contends that she is entitled to meaningful discovery under *Cole*. *See Cole*, 105 F.3d at 1482 (arbitration agreement must provide for some discovery). "Agreements to arbitrate are desirable precisely because they trade the procedures of the federal courts for the simplicity, informality, and expedition of arbitration." *Id*. Although discovery is not as extensive in arbitration, this is counterbalanced by the fact that arbitration is not bound by the rules of evidence. *Gilmer*, 500 U.S. at 31. Ms. Shelton may obtain discovery in arbitration, as the arbitration agreement between the parties is governed by the AAA rules. AAA Rule 9 authorizes arbitrators to order discovery "by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair explanation of the issues in dispute, consistent with the expedited nature of arbitration." *See* www.adr.org/sp.asp?id=32904#9 (last visited May 7, 2008). Ms. Shelton requests that if the Court orders arbitration, that she be permitted discovery, including

---

[5] The *Cole* decision does not bar filing fees and other administrative expenses in a minimal amount. *LaPrade v. Kidder, Peabody & Co., Inc.*, 246 F.3d 702 (D.C. Cir. 2001).

depositions. The Court declines Ms. Shelton's invitation to interfere in the arbitration process. The AAA rules will govern that process, and discovery will be permitted if she requests it before the hearing and the arbitrator agrees.

Third and finally, Ms. Shelton asserts that in the event arbitration is required, The Ritz should be deemed to have waived the one-year time bar set forth in the employment contract. The contract requires employees to request arbitration within one year of the management decision that they wish to appeal. Def.'s Mot. to Dismiss, Ex. 1 at 12. Ms. Shelton's failure to promote claim accrued in September of 2005, and she did not file this suit until October 2007. Thus, she fears her claim is time barred. Pl.'s Resp. at 12. In its pleadings, The Ritz does not assert the one-year time bar, but instead requests the Court to compel Ms. Shelton to proceed in arbitration. The Court construes The Ritz' request as a concession on the time bar issue. Accordingly, The Ritz is deemed to have waived the one-year time bar and it is precluded from arguing to the arbitrator that Ms. Shelton's claim was untimely.

## IV. CONCLUSION

For the foregoing reasons, the motion to dismiss filed by The Ritz [Dkt. #3] will be granted in part and denied in part. Ms. Shelton's allegation of discrimination relating to the denial of promotion in September 2005 will be dismissed, as it is governed by the parties' agreement to arbitrate. The Ritz will be precluded from arguing to the arbitrator that Ms. Shelton's claim was filed too late. Ms. Shelton's allegation that The Ritz discriminated against her when it denied her a promotion in May 2005 remains, as that claim is not subject to the arbitration agreement.[6] A

---

[6] In light of the Court's decision, should Ms. Shelton desire to arbitrate her May 2005 claim along with her September 2005 claim, she may do so by filing a motion to stay this case pending arbitration.

memorializing order accompanies this Memorandum Opinion.


Date: May 8, 2008                                     _____/s/_____
                                                                      ROSEMARY M. COLLYER
                                                                      United States District Judge